## UNITED STATES

v.

**Specialist Four Lawrence K. WILLIAMS, 292–56–5640, U. S. Army, Company C, 2d Battalion, 34th Armor, 4th Infantry Division (Mechanized), Fort Carson, Colorado.**

**SPCM 12031.**

U. S. Army Court of Military Review.

28 Feb. 1977.

Appellate Counsel for the Accused: CPT Donald R. Jensen, JAGC; CPT Buren R.

Shields, III, JAGC; LTC John R. Thornock, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Russell S. Estey, JAGC; CPT Lee D. Schinasi, JAGC; COL Thomas H. Davis, JAGC.

Before JONES, FULTON and FELDER, JJ.

## OPINION OF THE COURT

FULTON, Judge:

Pleading not guilty before a military judge constituting a special court-martial, the appellant was convicted of larceny by false pretense in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. The false pretense consisted of selling fake lysergic acid diethylamide (LSD) to an Army criminal investigator in a transaction arranged by an acquaintance serving as an informer. The approved sentence is noted in the caption.

The issues on appeal are whether the informer's knowledge that the substance was not a drug can be imputed to the purchaser, whether the appellant was entrapped, and whether the court lacked jurisdiction because the transaction, occurring off-post, was not service-connected.

Approached by his friend Private Naughton, who had become an informer, the appellant was asked whether he could obtain some LSD or amphetamines to sell. The appellant testified that this aroused his suspicion for he knew that Naughton was himself an experienced drug dealer with sources of his own (the appellant had been present during some of Naughton's transactions) and had heard that Naughton, being under charges, was cooperating with criminal investigators. Nevertheless, after Naughton asked two days later whether he had found any drugs, the appellant manufactured some fake "windowpane acid" by cutting clear celluloid into small squares and inserting them between two strips of cellophane tape. He then told Naughton he had purchased them and suggested that

perhaps he (the appellant) had been "ripped off." Naughton tested the substance and agreed, opining that it was only plastic. It is evident that these events occurred in the respective barracks rooms of the appellant and Naughton.

About two days later, and according to the appellant's testimony (Naughton was not a witness at the trial), Naughton approached the appellant, asked whether he still had the counterfeit windowpane acid, and asked that appellant bring it with him when they went "downtown." Naughton indicated that he had a possible purchaser and that he would handle the transaction. In Naughton's van and accompanied by one other serviceman, they drove to a parking lot in Colorado Springs. Special Agent Werth, a covert criminal investigator, approached the van and asked to buy "something for the head." The appellant either volunteered or acknowledged in response to a statement by Naughton that he had some windowpane acid to sell. Apparently the price was fixed at $85.00, for Werth left to make change for the five $20.00 bills that he was carrying. Upon Werth's return, the appellant got out of the van (apparently at Naughton's suggestion; several agents were in the vicinity as possible witnesses) to complete the transaction. In response to a statement or question by Werth, the appellant stated that the substance was "good stuff", and sold it to Werth for $85.00. They parted and the appellant was apprehended almost a month later.

In addition to the Charge of which he was convicted, the appellant was initially charged with attempting to violate Article 92, UCMJ, 10 U.S.C. § 892, by possessing, selling, and transferring a substance that he believed to be LSD. That Charge was withdrawn and dismissed after all of the evidence for both sides had been presented, and only the charge of larceny by false pretense remained.

■ Military jurisdiction over an offense must be tested by the criteria and considerations discussed in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), even when the victim is

the military department of which the accused is a member. *See United States v. Moore,* 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976) (fraudulently obtaining death gratuity). The factors found determinative of jurisdiction in *Moore* are equally persuasive here. We recognize that the appellant's ability to obtain money from Government sources did not rest, as in the case of a death gratuity, on legal entitlement flowing from military status. However, under the circumstances of this case, the difference is one of degree and not kind. Moreover, despite the appellant's argument to the contrary, it is quite clear that the plans and activities leading to the offense occurred in barracks at Fort Carson. *Cf. United States v. Hedlund,* 25 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (1976); *see also United States v. McCarthy,* 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976).

■ We do not agree with the appellant's contention that he was entrapped. Even disregarding his own testimony that he had been present on "a few" or "quite a few" past occasions when Naughton had bought or sold LSD or amphetamines, there nevertheless is adequate evidence of his predisposition to commit the offense. Initially, Naughton asked him whether he could obtain any drugs for resale (because he, Naughton, needed some money), then asked two days later whether the appellant had learned anything yet. The appellant said no, but, exercising his own creativity, proceeded to manufacture the counterfeit LSD and volunteered to Naughton that he had located a source. Learning that the LSD was fake, Naughton initially asked what the appellant intended to do and left the disposition of it to the appellant. Instead of destroying it, the appellant kept it awaiting later developments. Certainly the original suggestion, and plan for the final sale, was Naughton's. The appellant, however, manifested a predisposition or state of mind which readily responded to the opportunity to commit the forbidden act with which he was charged. *See Manual for Courts-Martial United States, 1969 (Revised edition),*

**558**

paragraph 216e. *Cf. Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

█ In a rebuttal to the staff judge advocate's review and before this Court, appellant's counsel have argued strenuously that the conviction of larceny by false pretenses cannot be sustained because the informer was an agent of the Government and his knowledge that the substance was counterfeit is imputable to the Government. While no cases have been cited, some support may be derived from cases in which the Government is bound by an informer's activities amounting to entrapment of the defendant. *See Sherman v. United States*, 356 U.S. 369, 375, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958) ("the Government cannot make such use of an informer and then claim disassociation through ignorance"). The argument fails, however, because of the informer's own complicity in the false pretense. According to the appellant, Special Agent Werth said in the preliminary conversation at the van that he wanted to buy only "good stuff," whereupon Naughton volunteered that the appellant had some windowpane acid. This, together with Naughton's undisputed knowledge that the substance was counterfeit, firmly establishes his own complicity in the deception. If Naughton was an agent, he was a double agent—equally guilty with the appellant in the offense of larceny by false pretense.

█ Other errors assigned by the appellant are equally without merit. The military judge's refusal to permit a witness to testify that Naughton told him that he knew the substance was not LSD was, if error, not prejudicial. The appellant's testimony to the same effect was admitted and is uncontradicted. That the military judge, who recommended suspension of the bad-conduct discharge, could not himself suspend it has been established by *United States v. Occhi*, 25 U.S.C.M.A. 93, 54 C.M.R. 93, 2 M.J. 60 (1976). *United States v. Silvernail*, 1 M.J. 945 (N.C.M.R. 13 May 1976), has been cited as authority for this Court to suspend the discharge. We do not reach that question, for we agree with the appellant's contention that the discharge is inappropriate in view of his record of service and the circumstances surrounding the commission of the offense.

The approved findings of guilty are affirmed. After considering the entire record, only so much of the sentence is affirmed as provides for confinement at hard labor for 100 days, forfeiture of $240.00 pay per month for a period of four months, and reduction to the grade of Private E–1.

Senior Judge JONES and Judge FELDER concur.