UNITED STATES, Appellee,

v.

Lawrence K. WILLIAMS, Specialist
Four, U. S. Army, Appellant.

No. 34,159.
SPCM 12031.

U. S. Court of Military Appeals.

April 3, 1978.

Captain Donald R. Jensen argued the cause for Appellant, Accused. With him on the brief were Colonel Robert B. Clarke, Lieutenant Colonel John R. Thornock, Major Benjamin A. Sims, and Captain Buren R. Shields, III.

Captain Jack M. Hartman argued the cause for Appellee, United States. With him on the brief were Colonel Thomas H. Davis, Lieutenant Colonel John T. Sherwood, Jr., Major Steven M. Werner, Major Michael B. Kennett, Captain Lee D. Schinasi, and Captain Russell S. Estey.

Opinion of the Court

PERRY, Judge:

Upon his conviction by a special court-martial of larceny by false pretense, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921, the appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 100 days, forfeiture of $240 pay per month for 4 months, and reduction to the lowest enlisted grade. The convening authority approved the findings and the sentence. The United States Army Court of Military Review has affirmed the findings and so much of the sentence that did not include the punitive discharge. United States v. Williams, 3 M.J. 555 (A.C.M.R.1977). However, we agree with the appellant that the charge must be dismissed, for the court-martial lacked jurisdiction over the offense. Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

When a fellow serviceman, whom the appellant knew to have been a drug dealer and whom the appellant correctly suspected then was an informant for the Criminal Investigation Division (CID), approached the appellant for some lysergic acid diethylamide (LSD) or some amphetamines, the appellant manufactured some fake "windowpane acid" by cutting squares of clear celluloid and packaging them between strips of cellophane tape. Later, the appellant told the informant that he had purchased some LSD, but that he feared he had been "ripped off." Upon testing the substance, the informant agreed that it simply was plastic. About two days later, however, the informant approached the appellant and asked whether he still had the counterfeit drug. The appellant responded affirmatively. The informant then suggested that the appellant bring it with him when the two of them went "downtown." The informant indicated that he had a pos-

sible purchaser. Once in town, the exchange occurred outside the informant's van between the appellant and an undercover criminal investigator, the appellant receiving $85 in exchange for the purported LSD. The appellant was apprehended nearly one month later. The instant conviction for larceny by false pretense ensued.[1]

Primarily relying upon *United States v. Moore*, 1 M.J. 448 (C.M.A. 1976), the Court of Military Review concluded that there was service connection vis-a-vis the charged larceny by trick. Specifically, the court opined that "[t]he factors found determinative of jurisdiction in *Moore* are equally persuasive here." *United States v. Williams*, *supra* at 557. *Moore*, as a foundation for this ruling, however, is infirm, for as the court itself recognized, "the appellant's ability to obtain money from Government sources did not rest, as in the case of a death gratuity [in *Moore*], on legal entitlement flowing from military status." *Id.*

The other basis for the opinion of the Court of Military Review is implicit in the following language of its opinion:[2]

> Moreover, despite the appellant's argument to the contrary, it is quite clear that the plans and activities leading to the offense occurred in barracks at Fort Carson. *Cf. United States v. Hedlund*, 25 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (1976); *see also United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976).

The appellant challenges this factual conclusion as not being supported by any evidence of record. However, this need not detain us, for the legal importance of it as the predicate for a conclusion of jurisdiction under the circumstances of this case is *de minimis*. It must be remembered that the offense under scrutiny is larceny, not *conspiracy* to commit larceny. *See United*

*States v. Hedlund*, 2 M.J. 11 (C.M.A. 1976), where this Court found court-martial jurisdiction over a charged conspiracy completed on post (that is, both the agreement and an act in furtherance thereof occurred on the military installation), but ruled that the court-martial lacked subject-matter jurisdiction over the substantive offense which was the object of that conspiracy, which occurred off-post.

In consideration of the 12 criteria and the 9 affirmative considerations discussed in *Relford v. Commandant, supra*, 401 U.S. at 365 and 367–69, 91 S.Ct. 649, we conclude that the court-martial lacked jurisdiction to try the appellant for larceny by false pretense.[3]

The decision of the United States Army Court of Military Review is reversed. The findings and the sentence are set aside. The charge is dismissed.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

I disagree with the majority's conclusion that military jurisdiction does not exist. The fake substance sold by the accused was prepared on base and some of the preliminary negotiations for its sale were also accomplished on base. In my opinion, these circumstances invest the offense with sufficient military connection to make it subject to trial by court-martial.

My conclusion as to the existence of court-martial jurisdiction requires that I consider the other issues upon which we granted review. These are: Whether the evidence is insufficient in law to support the findings of guilty; and, whether the trial judge erred to the prejudice of the accused by rejecting a defense proffer of testimony. Central to both is the knowledge of CID informant Naughton that the

---

1. The appellant was also charged with attempting to violate Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, by possessing, selling, and transferring a substance that he believed to be LSD. That charge was withdrawn and dismissed after all the evidence had been presented by both sides.

2. *United States v. Williams*, 3 M.J. 555, 557 (A.C.M.R. 1977).

3. This ruling renders unnecessary discussion of the other two issues this Court granted for review.

substance to be sold by the accused to undercover agent Werth was not the drug the accused represented it to be. The matter is important because the accused was charged with obtaining money by false pretense, with the pretense being that the substance of the sale was LSD, whereas it was, in fact, clear celluloid between strips of cellophane tape. As the Manual notes, a false pretense "need not be the sole cause inducing [one] to part with his property," but it must "be an effective (and intentional) cause." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 200a (5). Conceding such knowledge on the part of Naughton, the question then is whether the evidence is sufficient to support a finding, beyond a reasonable doubt, that Agent Werth had no such knowledge.[1]

Appellate defense counsel contend that as an informant, Naughton's knowledge must, as a matter of law, be imputed to Agent Werth. Imputation of knowledge of a fact possessed by one person to another depends upon the existence of a relationship between them of such nature that communication can be expected as a matter of common experience or as a necessary incident to the relationship. Recently, the majority perceived a sufficient "unity of function" between the staff judge advocate and trial counsel to allow imputation to the staff judge advocate of knowledge of an agreement between trial counsel and a government witness of a kind that would disqualify the staff judge advocate from participating in the post-trial review; but it went on to observe that independent evidence could establish that the staff judge advocate did not endorse or otherwise accede to the

promise. *United States v. Johnson*, 4 M.J. 8 n. 4 (C.M.A.1977); *cf. United States v. Dickenson*, 6 U.S.C.M.A. 438, 453, 20 C.M.R. 154, 169 (1955).

In my opinion, the relationship between a criminal informant, such as Naughton, who was, himself, a dealer in prohibited substances, and police agents is just too tenuous to impute to the agent knowledge of material facts possessed by the informant as to an offense he has reported. In any event, assuming that the relationship of informant-agent, by itself, justifies an inference that the informant communicated to the agent all the material facts that he knew, I am certain, as *Johnson* indicates, that the inference can be overcome by evidence that a particular fact was not communicated. I am satisfied that there is ample evidence to justify a finding by the trial judge that there was no communication by Naughton to the agents of the nature of the substance to be sold by the accused.

Among other things, the Court of Military Review did not find, and there is not a shred of direct evidence to indicate, that Naughton informed any agent that he knew the true nature of the substance. The testimony of Agent Werth amply supports a conclusion that he had no information from Naughton as to the true nature of the substance the accused would tender at the sale. I conclude from this record that substantial evidence supports the findings of guilty, and I would, therefore, affirm the decision of the Court of Military Review.

---

1. It is worth noting that on the argument on the defense proffer of Naughton's testimony, trial counsel represented, without objection by defense counsel, that the Government's "sources" indicated Naughton did not know at the time of the transaction in issue that the substance to be sold by the accused was fake.