**UNITED STATES, Appellee,**

**v.**

**Private (E-2) Fred WEISE, SSN 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, United States Army, Appellant.**

**CM 437368.**

U. S. Army Court of Military Review.

24 Aug. 1979.

Captain Donald J. Perrault, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Larry C. Schafer, JAGC.

Captain Rexford T. Bragaw, III, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel R. R. Boller, and Captain Robert D. Newberry, JAGC.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

WATKINS, Judge:

In accordance with his pleas, the appellant was convicted of three specifications of wrongfully transferring marijuana, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1976). He was sentenced by a court with members to a dishonorable discharge, confinement at hard labor for two years minus that portion already served, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. In conformity with the terms of the pretrial agreement, the convening authority approved the sentence but suspended for a period of 18 months the execution of that portion adjudging confinement at hard labor in excess of 18 months. The convening authority also implemented a ruling of the trial judge, which is reflected in the sentence adjudged by the court-martial, that Private Weise was entitled to credit for the period of pretrial confinement served (approximately 31 days). The case is before us for mandatory review pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (1976).

The principal issue on appeal is whether the court-martial which tried the appellant was properly vested with *in personam* jurisdiction. The matter was extensively litigated in the trial forum, where it was resolved adverse to the appellant's interests. It has been reargued before this Court, and we will independently examine the merits of this issue.

The appellant, a member of the Texas National Guard, was ordered to active duty for training (ADT) with the consent of the Governor of Texas for a period of "23 weeks or upon completion of Military Occupational Specialty [MOS] training, but not less than 12 weeks." The same written

directive[1] provided that the situs of the ADT was to be Fort Knox, Kentucky; that the appellant was to report on 24 July 1977 so as to begin basic combat training (BCT) on 29 July 1977; that he was to begin advanced individual training (AIT) in MOS 63C10[2] on 23 September 1977; and that, "unless sooner relieved or extended by proper authority," he was, upon completion of the period of ADT, to return to the place where he entered ADT and be relieved from such duty.

The offenses for which the appellant was convicted occurred on 12, 13, and 16 November 1977. Favorable personnel actions pertaining to Private Weise were suspended on 1 December 1977 when a Report for Suspension of Favorable Personnel Action (DA Form 268) was filed. On 16 January 1978 orders were promulgated by Headquarters, US Army Armor Center and Fort Knox awarding the appellant and 47 other enlisted trainees the MOS P63C10, effective 26 January 1978.[3] The instant criminal charges were sworn to and preferred on 23 January 1978.

Citing *United States v. Peel*, 4 M.J. 28 (C.M.A.1977), the appellant contends that he completed military training on 16 January 1978 and, by virtue of his "self-executing" ADT orders, that he reverted to State control on that date.[4]

Because of its unique facts and broadly-stated holding, *Peel* is of limited assistance here. Additionally, the statement in *Peel* that "retention of a national guardsman after the term of active duty specified in orders by state officials without further authorization by them is not allowable,"[5] was significantly refined in Judge Cook's majority opinion in *United States v. Hudson*, 5 M.J. 413 (C.M.A.1978). This latter

opinion contains a comprehensive analysis of jurisdictional issues associated with the performance of active-duty training by national guardsmen pursuant to State-issued ADT orders. The statutory and regulatory framework for Private Weise's active-duty training appears to be the same as that discussed in *Hudson*.[6] There are factual similarities in the two cases as well. Like Private Hudson, it appears that Private Weise had to be administratively "recycled" in order to complete the training requirements for MOS qualification. Consequently, he remained on active duty beyond the 23-week period specified in his ADT orders. That he did so is not determinative, *ipso facto*, of the jurisdictional question under review. The appellant was ordered to Fort Knox for the express purpose of qualifying in a particular MOS. He was still pursuing that objective on 31 December 1977, the end of the 23rd week. Significantly, the holding in *Peel* was amplified in *Hudson* as follows:

> In view of the limited purpose for which the accused was on active duty, it [revocation to amendatory orders] could not, *after attainment of his MOS*, retain him indefinitely on active duty, without his consent and the 'authorization' of the state reserve authority.

*United States v. Hudson, supra*, 5 M.J. at 418 (emphasis added).

The notion of implied authorization on the part of State authorities to an extension of a specified ADT period under circumstances such as these was also addressed in *Hudson*:

> Considering the enlistment procedure and the evidence at trial, it may fairly be concluded that the accused and the state authorities anticipated that the time specified in the original order to active duty

---

1. Orders 110–5, State of Texas Adjutant General's Department, dated 10 June 1977.

2. Track Vehicle Mechanic.

3. Orders 10–44, Headquarters, US Army Armor Center and Fort Knox, dated 16 January 1978.

4. This argument was advanced for the first time on appeal. As noted in a succeeding paragraph of this opinion, evidence bearing on this

issue, and arguably at odds with his present position, was introduced by the appellant at trial.

5. *United States v. Peel*, 4 M.J. 28, 29 (C.M.A. 1977).

6. *See* 10 U.S.C. § 672(d) (1976) and implementing regulations.

might not be enough to enable the reservist to complete his training for MOS qualification, and, therefore, they agreed, as part of the enlistment contract, to accept such extensions of time for that purpose as might be deemed necessary by the Army. The anticipation and the agreement are implicit in a provision in the initial order to the effect that the period of active duty could be 'extended by proper authority.'

*Id.* at 416.

We entertain little doubt that during the January 1978 time frame, all of the interested parties (State National Guard authorities, Active Army officials, and Private Weise himself) understood and intended that he would remain in active Federal service until he completed AIT, the revised date of which was during the last week of the month. As to the exact date, the Government adduced the testimony of Sergeant Major Donald R. Ingram, whose duties at the U.S. Armor Center Reception Station entailed administrative support for enlisted members of the National Guard who were temporarily assigned to Fort Knox for ADT, that the appellant completed MOS training on 26 January, the effective date of his MOS award. We agree with that conclusion.[7] It is clear from the record of trial that the appellant possessed a similar understanding. A defense-initiated stipulation during the sentencing phase of the trial resulted in the following colloquy involving the military judge:

> DC: . . . the defense would like to inform the court that the accused's active duty for training ended on the 28th of January.[8] We've entered into an oral stipulation with the trial counsel, to the effect that the accused's active duty for training ended on 28 January 1978, however, he was retained on active duty for purposes of court-martial.

MJ: Do you consent that I take that?

ACC: Yes, Your Honor.

MJ: All right.

 Having determined that the effective date of the appellant's MOS award was 26 January 1978, we turn now to the central question of whether the appellant was properly subject to military criminal jurisdiction at the time of his trial, 23–25 May 1978. Paragraph 11*d*, Manual for Courts-Martial, United States, 1969 (Revised edition) plainly indicates that the "filing of charges" constitutes sufficient evidence of "commencement of action with a view to trial" to allow continuation of military jurisdiction over the individual. *See also United States v. Hudson, supra,* 5 M.J. at 419; *United States v. Gonzalez,* 5 M.J. 770, 772 (A.C.M.R.1978). In this instance, charges were formally preferred against the appellant on 23 January 1978, several days before he completed AIT and qualified for the designated MOS. Such action was sufficient to sustain jurisdiction over the appellant beyond the terminal date of his ADT orders, for the purpose of trial, sentence, and punishment.

 Appellant's second assignment of error alleges that the court-martial lacked subject-matter jurisdiction to try him for drug offenses occurring off post and after duty hours. After carefully reviewing the evidence of record, including the detailed written stipulation of fact prepared prior to trial by the parties thereto, we find ourselves in agreement with the trial judge that the court-martial had jurisdiction over the alleged drug offenses. Analysis of the jurisdictional factors enumerated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), clearly establishes the requisite service connection. The negotiations (which by and large were conducted

---

7. *See* paragraph 1–13*a* (1), Army Regulation 310–10, Military Orders (3 November 1975), which provides that *unless a later date is specified,* the effective date is the date of the orders (emphasis added).

8. The record is not clear as to exactly what transpired on 28 January 1978. It may be that the trainees "graduated" on that date. It is clear, however, that MOS training was completed effective 26 January 1978. The slight difference in dates is not significant for our purposes and has no effect upon the result.

on post, during duty hours, while the appellant was in uniform in his company area), were consummated off post at the direction of the appellant who feared detection "by the First Sergeant and someone else in the company" who already "suspected him of selling out of the trunk of his car." Moreover, there is no question that the appellant had been informed that the transferee also had military status and that the underlying purpose was to facilitate further distribution to military personnel (trainees) on post. *See United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979); *United States v. McCarthy,* 2 M.J. 26 (C.M.A.1976); *United States v. Eggleston,* 6 M.J. 600 (A.C.M.R.1978), *pet. denied* 6 M.J. 294 (C.M.A.1979).

The remaining assignments of error are nonmeritorious and do not warrant discussion or comment.

The findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge LEWIS concur.