UNITED STATES, Appellee,

v.

George A. CARR, Private, U. S. Army, Appellant.

No. 32,891.

CM 433267.

U. S. Court of Military Appeals.

Oct. 1, 1979.

For Appellant: *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain Richard A. Pearson, Captain John E. Caulking* (on brief); *Lieutenant Colonel John R. Thornock.*

For Appellee: *Lieutenant Colonel R. R. Boller, Captain Lee D. Schinasi, Captain Michael J. Hurley* (on brief); *Colonel Thomas H. Davis.*

Opinion of the Court

COOK, Judge:

Following remand [2 M.J. 156 (C.M.A. 1976)] for consideration in light of *United States v. McCarthy,* 2 M.J. 26 (C.M.A.1976), the United States Army Court of Military Review again held that the circumstances surrounding commission of the offenses involving LSD, of which the accused was convicted,[1] established a sufficient military nexus to justify exercise of court-martial jurisdiction. We granted further review to consider the correctness of the court's decision and the adequacy of the trial judge's inquiry into the accused's understanding of the meaning and effect of a request for trial by judge alone. 4 M.J. 58 (C.M.A. 1977). We have since decided that the allegation of inadequacy in the trial judge's inquiry, which was relied upon by the accused, lacks merit. *United States v. Parkes,* 5 M.J. 489 (C.M.A.1978).

Turning to the jurisdictional issue, we note preliminarily that the evidence con-

---

1. Although the accused was convicted of four offenses, comprised of possession and sale of LSD on two separate occasions, the trial judge ruled that the possession and sale involved in each transaction were not separately punishable. *See United States v. Axley,* 1 M.J. 265 (C.M.A.1976). The judge also determined that the maximum punishment for each set of offenses included confinement for no more than one year. *See United States v. Thurman,* 7 M.J. 26 (C.M.A.1979); *United States v. Guilbault,* 6 M.J. 20 (C.M.A.1978).

sidered by the trial judge on defense motions to dismiss came only from government witnesses. Later, the accused testified in his own behalf, and in important particulars he disputed the government witnesses. The judge made special findings, one of which was that the accused was "singularly incredible." Nevertheless, we have limited our consideration to that evidence the trial judge could have credited in ruling on the motions. This evidence leaves no doubt that the accused was an active participant with a Specialist Valles in effecting the sales with which he was charged.[2]

The first transfer of LSD took place in the parking lot of a civilian bar near Fort Dix, New Jersey. About 20 minutes earlier, an undercover agent, his civilian companion, who was known to the accused as a drug "trafficker"; a Specialist Valles; an unidentified person who had come with him; and the accused had been in the accused's barracks room. There, they had negotiated for, and reached agreement on, the transfer of a specified quantity of LSD, and the price. The agent was directed to go to the parking lot for the exchange of money for the LSD. Shortly after the agent, accompanied by another, arrived at the parking lot, a van, driven by Valles, parked by his car. The agents entered the van and found the accused seated on the floor. The accused remarked that "he had the acid." Valles gave one of the agents two strips of paper, each of which contained 100 "doses." On verifying the amount by count, the agent gave Valles $500.00.

In *United States v. Sandy*, 4 M.J. 102 (C.M.A.1977), we said:

[I]n instances of drug sales, transfers and deliveries which occur off post, the fact that all the essential negotiations and criminal intent were formulated on post is critical, and often determinative, in finding military jurisdiction for the offense under *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

We reaffirmed the statement most recently in *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979). The evidence in this case demonstrates that the off-base exchange of the money and LSD was simply the final step of a series that began on base and continued through all the essential steps but the last, and that was within the intention of the accused. The brief interval of time and distance that separated the last step from those that preceded it did not so break the direct and immediate connection between them as to require that the last circumstance be treated as an independent event for the purpose of court-martial jurisdiction. Accordingly, we affirm the findings of guilty as to this proscribed transaction.

A second sale to the agents took place at the apartment of the civilian "trafficker" two days after the first. The Court of Military Review upheld the exercise of court-martial jurisdiction as to this transaction on the ground it "was a direct continuation of the first incident." We are constrained to disagree.

At the first sale, Valles had indicated a willingness to sell more LSD to the agents. However, a disposition to repeat a criminal act does not alone impart military significance to a future off-base offense. Here,

---

2. Among the statements demonstrating accused's role in the transactions that were attributed to the accused by government witnesses are the following:

    (1) In a discussion with an undercover government agent, the accused represented that he knew the person the agent had said had been supplying him with "acid [LSD]," and "he could" provide it "cheaper" than the price allegedly paid.

    (2) During negotiations held in accused's room as to price and quantity for the first sale, the accused told the agent he could have 100 "hits" at $2.50 each; when asked if the

amount could be increased to 200, the accused conferred privately with Valles, returned to the agent and gave an affirmative answer.

    (3) The accused acknowledged the price he quoted was "high," but observed that a "hit" "goes for $4.50 to $5.00."

    (4) When the acid was tendered and the agent asked whether it was any "good," the accused responded: " 'Sure, it's good, they're quarters,' " which the agent understood to mean that each "hit" could be broken "into four doses."

the second transaction was apparently initiated by the civilian trafficker. All the participants met at his apartment in the civilian community, and all the details for a second transfer were worked out there and then. In short, all the steps incident to this sale were "blended into the civilian community." *United States v. Alef*, 3 M.J. 414, 418 n. 12 (C.M.A.1977); *see also United States v. Klink*, 5 M.J. 404 (C.M.A.1978). Consequently, the possession and sale (specifications 2 and 4 of the Charge)[3] incident to this transaction were not cognizable by a court-martial.

The decision of the United States Army Court of Military Review as to specifications 2 and 4 of the Charge and the sentence is reversed. The findings of guilty of the stated specifications are set aside and those specifications are dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence on the basis of the remaining findings of guilty.

Chief Judge FLETCHER concurs.

PERRY, Judge (dissenting): *

I dissent. While the underlying negotiations between the appellant and the undercover agents occurred in the appellant's barracks room at Fort Dix, New Jersey, the record reflects that the actual sales and deliveries of narcotic substances transpired at Springfield, New Jersey, and at Mt. Holly, New Jersey, away from Fort Dix. In each instance the actual sale and delivery was made by a man named Valles, with whom the appellant dealt and apparently had an *ongoing relationship involving the* trafficking of narcotics. The appellant was charged with and convicted of possession and sale of lysergic acid diethylamide (LSD).

Our cases clearly hold that the mere planning and formulating of a criminal venture on a military installation does not operate to confer court-martial jurisdiction to try the substantive offense, the object of the criminal venture, where the substantive offense occurs exclusively away from the military reservation. Thus, in *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976), we sustained court-martial jurisdiction over a charge of conspiracy to commit robbery where the planning and preliminary negotiations were known to have occurred on the military base, but found the absence of court-martial jurisdiction with respect to the object of the conspiracy, the robbery, which occurred away from the military base. *See United States v. Smith*, 5 M.J. 129 (C.M.A.1978); *United States v. Williams*, 4 M.J. 336, 337 (C.M.A.1978); *United States v. Sandy*, 4 M.J. 102 (C.M.A.1977); *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977); *United States v. Henry*, 3 M.J. 190 (C.M.A.1977); *United States v. Sims*, 2 M.J. 109 (C.M.A.1977); *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976); *United States v. Uhlman*, 1 M.J. 419 (C.M.A.1976). The appellant was not tried and convicted on conspiracy charges which clearly could have been made on account of the planning activity which occurred at his barracks at Fort Dix, New Jersey. Instead, he was prosecuted for conduct that occurred away from the military base. Under those circumstances, the court-martial which tried and convicted him was without jurisdiction. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

I would reverse the decision of the Court of Military Review and order that the charge be dismissed.

3. *See* n. 1, *supra*.

\* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.