UNITED STATES

v.

**Airman First Class John J. D'ALOISE, FR 051–56–7366, United States Air Force.**

**ACM 22544.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 24 May 1979.

Decided 8 Jan. 1980.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips, Colonel Larry G. Ste-

phens, Captain Robert G. Gibson, Jr., and Major Marc G. Denkinger, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Robert T. Mounts.

Before EARLY, POWELL and ARROWOOD, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

The accused was tried by general court-martial, military judge alone, and was convicted, pursuant to his pleas, of transferring Lysergic Acid Diethylamide (LSD) and marijuana, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances and reduction to airman basic.

Appellate defense counsel invite our attention to the errors assigned by trial defense counsel in his comments on the review of the staff judge advocate pursuant to *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975). Except as discussed below, we find these assignments to be without merit and not warranting further discussion.

At trial, defense counsel attacked the jurisdiction of the military court over the offenses alleged in specification 2 of Charge I and the specification of Charge II. The referenced specifications alleged the transfer of LSD and marijuana at an off-base location. We find jurisdiction was correctly exercised by the military court.

The facts adduced at trial, after defense counsel's motion to dismiss for lack of jurisdiction, establish that after the sale of LSD by the accused to an airman working as an informer for the Air Force Office of Special Investigations (OSI) in early January, 1979 (the basis of specification 1 of Charge I), the informer met the accused who told him that "he could get some good Columbian Gold grass and some microdot acid." The informer evinced some interest in a second sale and afterwards contacted his OSI con-

trol for advice. The agent told the informer to proceed. Thereafter the informer contacted the accused who offered to sell a half ounce of marijuana and five "hits of acid" for forty-five dollars the next morning. On the following day the informer again contacted the accused who told him that he had car trouble and did not know when he could get off base to pick up the drugs. Later that evening the informer called the accused, and, upon being told that the accused's car was still not functioning, offered to provide a ride off base to pick up the drugs. The accused agreed, and the informer, accompanied by an OSI undercover agent, picked up the accused at his barracks and drove off base. Up to this point all contacts between the accused and the informer had been made on base in the general area of the security police barracks.

After leaving the base, the group proceeded to a location in a nearby town where the accused was given the money previously agreed upon and departed the van. Upon his return he gave the drugs to the OSI undercover agent. They then returned to the security police barracks where the accused left the van. Subsequent chemical analysis disclosed that the substances procured were LSD and marijuana.

We think the recent cases of *United States v. Strangstalien*, 7 M.J. 225 (C.M.A. 1979) and *United States v. Carr*, 7 M.J. 339 (C.M.A.1979) are dispositive. In *Strangstalien*, the Court held:

Turning, as is proper, to the *Relford* analysis, we perceive that the sale was the result of a contract created on a military installation. While the execution of the terms of sale occurred off-base, the contractual agreement was made in barracks under military control. The commission of the crime, viewed contractually, therefore, did not occur solely at the locus of transfer of the substance, which factor under the second or third *Relford* criterion might deprive the military courts of jurisdiction. In *United States v. McCarthy*, 2 M.J. 26 (C.M.R.1976), we spoke of the formation of the criminal intent for the offense on post as weighing heavily in

favor of military jurisdiction in a marihuana transfer offense. In the case of a drug sale such as the one before us in specification 1 of the Charge, this *McCarthy* factor is equivalent to the formation of a contractual agreement on base, even with terms yet to be completed off base. 7 M.J. at 226.

And, in *Carr, supra*, the Court held:

The evidence in this case demonstrates that the off-base exchange of the money and LSD was simply the final step of a series that began on base and continued through all the essential steps but the last, and that was within the intention of the accused. The brief interval of time and distance that separated the last step from those that preceded it did not so break the direct and immediate connection between them as to require that the last circumstance be treated as an independent event for the purpose of court-martial jurisdiction.[1]

In the light of these pronouncements, we find the following facts to be determinative of the proper exercise of military jurisdiction: the entire pretransfer negotiations took place on a military base; the parties contemplated the transfer would take place on the base; but for an unforeseen, independent, event—the non-availability of the accused's car—the entire transaction would have occurred on base; and the purchasers were fellow airmen and the accused knew that the drugs would be brought on base.[2]

The findings of guilty and the sentence are

AFFIRMED.

POWELL, Judge, concurs.

ARROWOOD, Judge, absent.

1. "[I]n instances of drug sales, transfers and deliveries which occur off post, the fact that all the essential negotiations and criminal intent were formulated on post is critical, and often determinative in finding military jurisdiction for the offense under *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971)." *United States v. Sandy*, 4 M.J. 102 (C.M.A.1977), quoted with approval in *Carr, supra*.

2. See *United States v. Weise*, 7 M.J. 993 (A.C. M.R.1979); *United States v. Tinley*, 2 M.J. 694 (A.F.C.M.R.1976), affirmed, 4 M.J. 86 (C.M.A. 1977); *Peterson v. Goodwin*, 512 F.2d 479 (5th Cir. 1975). It appears that the accused could have been charged with conspiracy to introduce drugs onto a military installation, in violation of Article 134, which impliedly constitutes a threat to military order and discipline.