UNITED STATES, Appellee,

v.

Specialist Four Charlie L. ROSS, SSN 419–76–2614, United States Army, Appellant.

CM 438552.

U. S. Army Court of Military Review.

30 May 1980.

---

Lieutenant Colonel John F. Lymburner, JAGC, Captain Kevin E. O'Brien, JAGC, and Captain Alan W. Schon, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Captain Stephen D. Smith, JAGC, and Captain Karen S. Gillett, JAGC, were on the pleadings for appellee.

Before RECTOR, CARNE, and O'DONNELL, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

In accordance with his pleas of guilty, the appellant was convicted of being an accessory after the fact of larceny and knowingly concealing stolen property in violation of Articles 78 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 878 and 934. The adjudged sentence as reduced by the convening authority pursuant to a pretrial agreement provides for a bad-conduct discharge, confinement at hard labor for eight

months, forfeiture of all pay and allowances and reduction to the grade of Private (E–1).

██ The appellant now asserts that the court-martial lacked jurisdiction over the offense of concealing stolen property because the concealment occurred off-post; hence there were insufficient criteria to establish the service connection required by *Relford*.[1] The specification of this offense provides in pertinent part that the appellant did, "at Fort Campbell, Kentucky, an installation under exclusive federal jurisdiction, . . . unlawfully conceal at his grandmothers [sic] house located in Helflin [sic], Alabama" certain stereo equipment, the property of another named soldier which the appellant knew had been stolen. At trial after arraignment, the counsel for the government acknowledged that the portion of the specification alleging the situs of the offense "at Fort Campbell, Kentucky" was inaccurate. He proposed an amendment to the specification for the purpose of stating a jurisdictional base in accordance with *Alef*.[2] However, the trial judge sustained the defense objection to the amendment. Although we recognize that the draftsmanship displayed in the specification is inartful and does not meet the requirements of *Alef*, these defects are not fatal, particularly since the appellant raised no objection at trial other than to the proposed amendment, and it appears clear that the appellant was not misled by the form or contents of the specification. Paragraphs 67*b* and 69*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

---

1. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), held that resolution of service connection must be by detailed analysis of the following:

    1. The serviceman's proper absence from the base.
    2. The crime's commission away from the base.
    3. Its commission at a place not under military control.
    4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
    5. Its commission in peacetime and its being unrelated to authority stemming from the war power.
    6. The absence of any connection between the defendant's military duties and the crime.

    7. The victim's not being engaged in the performance of any duty relating to the military.
    8. The presence and availability of a civilian court in which the case can be prosecuted.
    9. The absence of any flouting of military authority.
    10. The absence of any threat to a military post.
    11. The absence of any violation of military property.
    12. The offense's being among those traditionally prosecuted in civilian courts.

2. *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977).

In resolving the appellant's jurisdictional attack, a recital of the facts related by him during the inquiry before acceptance of his pleas is pertinent. Therein he stated essentially as follows: At about 9:30 on the night of 23 March 1979, PFC Green, an acquaintance from the 501st Signal Battalion came up to him in the unit's parking lot and asked to borrow his car. The appellant loaned Green the vehicle for an unspecified purpose. The vehicle was returned to the appellant at the parking lot in about fifteen minutes at which time the appellant saw a laundry bag on the rear seat. The appellant looked in the bag and saw a cassette tape deck. Although Green did not say where the equipment came from, the appellant knew that the equipment was stolen from the barracks by the way Green and his companions were acting and particularly since he saw two speakers in the back seat of another large dark car nearby. At the appellant's suggestion, Green drove the appellant's vehicle, somebody else drove the large dark vehicle and they delivered all the equipment to a trailer at an off-post trailer park occupied by a soldier from an artillery unit. The appellant suggested this location because his friend was the only person that he knew who lived off-post. The appellant did not accompany them but he drove by later to make sure they went to the right place. At that time he saw all the stereo equipment at his friend's trailer and it appeared to be in pretty good shape. Although he did not own a stereo he believed the equipment would be valued as stated in the specification (about $1,277.10) and he was aware that it belonged to a Specialist Four Rockey. On or about 8 April 1979, because the appellant's friend did not want the stolen equipment left in the trailer, the appellant bought the property from PFC Green for $600.00 and took it to his grandmother's house in Heflin, Alabama. The appellant bought the equipment because they (presumably Green and his companions) did not know what else to do with it. The appellant figured that since he did not steal the property and even though he knew it was stolen, he did not see any way that he could get caught. The equipment was subsequently recovered from his grandmother's house.

Relying on the language of the Court of Military Appeals in the case of Tucker,[3] wherein it was stated "[I]n resolving military jurisdiction over concealing stolen property offenses, the place of concealment is of utmost significance since concealment is the gravamen of the offense," the appellant asserts that court-martial jurisdiction must fail because the situs of the concealment was off-post. Although we recognize that situs of the offense is extremely important, we find that the facts of the instant case are clearly distinguishable from the facts in Tucker in at least two vital aspects. First, it is abundantly evident that the appellant, although off-duty, had extensive on-base dealings with the soldiers who committed the larceny on-post. Second, there is evidence indicating that the accused knew the owner of the property was a fellow serviceman. Furthermore, it is evident that the appellant assisted the military thieves by selecting the off-post location and providing his automobile to the thieves to transport the equipment away from the on-post location of the theft in order to hinder or prevent their apprehension. Immediately thereafter he went to the off-post location to inspect the property and verify that it arrived at the pre-determined location, thereby evidencing an intent that he planned to exercise some further dominion and control over the stolen property at a later time.

Additionally, when the appellant's soldier friend indicated that he wanted the stolen property removed from his off-post trailer, presumably because he feared that he would be implicated in the crime, the appellant then knowing full well from his past dealings that the property was stolen and of a much greater value, and capitalizing on this prior knowledge, purchased it for less than one half its value and removed it out of the State to the sanctuary of his grandmother's home in Alabama. In our view

3. United States v. Tucker, 1 M.J. 463 (C.M.A. 1976).

this was a continuation of original dealings that occurred on base shortly after the original larceny had occurred, and these dealings were greatly facilitated by the appellant's military status. *Cf., United States v. Escobar*, 7 M.J. 197 (C.M.A.1979).

Applying the foregoing to the criteria enumerated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), we find several factors weighing heavily in favor of court-martial jurisdiction as follows:

6. The appellant formulated his criminal design on-post, although off-duty.

7. The appellant knew that the victim was a fellow soldier.

9. Military authority is clearly flouted when servicemembers commit crimes on-post and thereafter conceal the fruits of the crime at an off-post location.

10. A crime which is initially committed on post but then continues to an off-post location constitutes a threat to the maintenance of law and order on the post.

11. It may be inferred from the circumstances that the appellant knew that his friends had violated military property, i. e., the unlawful entry into the barracks to steal the victim's property.

12. Although the civilian authorities undoubtedly could have tried the appellant for some offense involving the concealment, under the circumstances, this crime would have a minimal impact on the States involved with only slight incentive for prosecution, whereas there is a most severe impact on the military community involved by a crime of this nature.

Accordingly, we conclude that the military interests far outweigh those of the civilian community and the offense was properly triable by court-martial. *United States v. Moore*, 1 M.J. 448 (C.M.A.1976).

The findings of guilty and the sentence are affirmed.

Chief Judge RECTOR concurs.

O'DONNELL, Judge, dissenting:

My analysis of the facts in this case convinces me that the offense of concealing stolen property, occurring as it did in Heflin, Alabama, is not service connected as required by *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). I reach this conclusion largely because I view the criteria enunciated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), in a perspective different from that of the majority. There is no issue as to the charge of accessory after the fact as that offense occurred on-post.

The specification in question provides little guidance as to the Government's theory of jurisdiction:

> In that Specialist Four Charlie L. Ross, U.S. Army, Company B, 3d Battalion 187th Infantry, 101st Airborne Division (Air Assault) did, at Fort Campbell, Kentucky, an installation under exclusive federal jurisdiction, on or about 8 April 1979, unlawfully conceal at his grandmothers [sic] house located in Helflin [sic], Alabama, [certain stereo equipment], of a value of about $1,277.10, the property of Specialist Four David L. Rockey, of Company B, 501st Signal Battalion, which property, as he, the said Specialist Four Charlie L. Ross, then well knew, had been stolen.

It appears that the Government's position was that the appellant's knowledge that the property had been stolen at Fort Campbell provided the necessary nexus.[*]

The pertinent facts in this case are relatively simple. On 23 March 1979, the appellant assisted a fellow soldier who had stolen the stereo equipment on Fort Campbell by lending him his automobile to move the equipment off-post. The stolen property remained in another friend's trailer located in New Providence, Tennessee until 8 April. At that time, the occupant of the trailer requested that it be removed. The appel-

---

[*] After the military judge noticed the inaccuracy of the allegation as to the locus of the offense, the Government sought to allege the jurisdictional basis by amending the specification by adding the phrase "at Fort Campbell, Kentucky, on or about 23 March 1979" at the end thereof. The judge denied the motion and pursued the jurisdictional issue no further.

lant thereupon purchased the equipment from the original thief and transported it to his grandmother's house in Heflin, Alabama.

The majority cites six of the twelve *Relford* factors in support of its finding of jurisdiction. These factors—or at least some of them—tend to support jurisdiction as to the accessory charge and perhaps could be cited in support of a service connection vis-a-vis a concealing offense in the trailer at New Providence, had the appellant been so charged. But the cited factors do not in my view support jurisdiction as to a concealing offense which was committed many miles from the original larceny some fifteen days later.

For example, any flouting of military authority, threat to the military post, or violation of military property which may have occurred with respect to the original theft was so attenuated, if not completely dissipated, by the time the appellant concealed the stereo equipment at his grandmother's house in Heflin, Alabama, as to lose all significance. In this connection, I take issue with the majority's holding that the appellant formulated his criminal design on-post. The evidence does not, in my opinion, support that conclusion. It is more likely that any such design was formulated off-post, either in New Providence, Tennessee, or Heflin, Alabama. As I view the evidence, there were no acts committed on-post other than those relating to the accessory charge which serve as a basis for jurisdiction over the concealing charge. *See, e. g., United States v. Carr*, 7 M.J. 339 (C.M.A. 1979); and *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979). The appellant's decision to purchase the property and remove it to Heflin, Alabama, was only an unanticipated aftermath of the original criminal acts committed on-post.

The only *Relford* factor supporting service connection is the fact that the appellant knew the victim was a soldier. Even here the evidence is somewhat vague. This factor should be considered but it is hardly decisive. As the Court of Military Appeals said in *United States v. Tucker*, 1 M.J. 463, 464–5 (C.M.A.1976):

> [The *Relford* decision] made clear that, in resolving questions of military jurisdiction, the situs of the offense is far more significant than the status of the accused or the victim. . . . This is particularly true where, as here, a serviceman is only indirectly "victimized" by the defendant. We previously have stressed that, in resolving military jurisdiction over concealing stolen property offenses, the place of concealment is of utmost significance since concealment is the gravamen of the offense.

The facts of this case do not establish the required service connection. I would set aside the specification charging the appellant with concealing stolen property at his grandmother's house in Heflin, Alabama.