**UNITED STATES**

v.

**Jeffrey D. ASKEW, 274 76 8158 Hull Maintenance Technician Fireman (E–3), U.S. Naval Reserve.**

**NMCM 86 2907.**

U.S. Navy-Marine Corps Court of Military Review.

22 Dec. 1986.

LCDR R.J. SMITH, JAGC, USN, Appellate Defense Counsel.

LT J. CUNYON GORDON, JAGC, USN, Appellate Defense Counsel.

LT LARRY D'ORAZIO, JAGC, USNR, Appellate Government Counsel.

Before MATTHEW J. GORMLEY III, C.J., and J.E. RILEY and JOHN E. GRANT, JR., JJ.

PER CURIAM:

Contrary to his pleas at a special court-martial consisting of officer members, appellant was convicted of two specifications of stealing money from the Government, in violation of Article 121 of the Uniform Code of Military Justice, 10 U.S.C. § 921. The sentence consisted of two months confinement and a bad-conduct discharge and was approved by the convening authority as adjudged. In his sole assignment of error, appellant maintains that the Government failed to prove beyond a reasonable doubt that he stole $12.00 of Government funds by trick. We disagree.

The record demonstrates that appellant met with a man whom he thought to be named Frank, in reality Naval Investigative Service (NIS) agent Keith Thomas, in the parking lot of an off-base restaurant for the purpose of conducting an illegal drug transaction. This meeting between the appellant and the NIS agent had been arranged by one of the appellant's fellow sailors. The evidence adduced by the Government established that the appellant transferred to the agent 50 white tablets which he referred to as "white crosses" and which he represented to be a type of "speed" (amphetamine), a controlled substance, and for which the NIS agent paid the appellant $12.00 in government funds. Laboratory analysis later proved the white tablets to actually consist of ephedrine, a non-controlled substance which could be purchased legally over the counter. It was established as well, during cross-examination of the NIS agent, that the term "white crosses" is also used to describe caffeine tablets typically used by college students during exam study time.

The crux of appellant's assignment of error is that the Government failed to prove that the NIS agent parted with the $12.00 based upon the appellant's false representations. Appellant asserts that the government agent's knowledge that the term "white crosses" applies to non-controlled substances as well as to some forms of "speed," together with the fact that he was obtaining 50 pills for only $12.00, demonstrates that the false representations were not the inducement to part with the money and that, therefore, there can be no larceny by false pretense. Additionally, appellant urges that there can be no larceny where the agent received something of perhaps equal value for the $12.00.

We find that there was sufficient evidence from which the trier of fact could find beyond a reasonable doubt that appellant's false representation was "an effective and intentional cause" inducing the NIS agent to part with the $12.00. Manual for Courts-Martial, United States, 1984, Part IV, ¶ 46c(1)(e). The appellant testified at trial that he informed the NIS agent that the tablets he was purchasing were merely caffeine. This contrasts markedly with the testimony of the NIS agent, and with the appellant's own pretrial statement, "I told him [the NIS agent/buyer] they [the 50 white tablets] were 'speed', but I knew they were just caffeine I figured if he was foolish enough to pay $12.00 for what I knew was not 'speed' (amphetamines), it was his problem." Prosecution Exhibit 5. Furthermore, as asserted by the Government, the agent was there for the sole purpose of completing a drug transaction. If the appellant had been honest and told the agent that the pills were merely caffeine, the agent would have no reason to complete the transaction because selling caffeine is not a crime. Therefore, the only inducement for the agent to pay $12.00 was appellant's false representation—the very definition of obtaining property by false pretense. That such a result was intentional was admitted by the appellant both in his pretrial statement and in his testimony on cross-examination. Additionally, appellant's assertion that the agent received equal value for the property with which he parted is inapposite to the issue of guilt of larceny by false pretense. It is well established that the fact that the victim may have not suffered any pecuniary loss is of no consequence. *United States v. Rubenstein,* 7 U.S.C.M.A. 523, 22 C.M.R. 313 (1957); *United States v. Turiano,* 13 C.M.R. 753 (A.F.B.R.1953); *see also United States v. Williams,* 4 M.J. 336 (C.M.A.1978) (Cook, J., dissenting); *United States v. Christy,* 18 M.J. 688 (N.M.C.M.R.1984); *United States v. Lusk,* 21 M.J. 695 (A.C.M.R.1985). The assignment of error is without merit.

In a footnote, appellant invites the Court to consider the correctness of the military judge's denial of his motions to dismiss for lack of jurisdiction and for failing to plead service connection factors in accordance with *United States v. Alef,* 3 M.J. 414 (C.M.A.1977). Upon considering the record of trial and the arguments of counsel below, we find that the military judge properly denied the motions. The initial contact for the purported illicit drug transactions was made on base through the assistance of a fellow sailor. Numerous telephonic contacts between appellant and supposed drug purchasers were made to the appellant on base. Such activity has great potential to produce a deleterious effect on good order and discipline within a military enclave. Additionally, it was established through the appellant's own statement that not only was the initial contact for the transaction established on base, but that it was on base that he first formed the intent to make money by falsely representing that he was a vendor of illicit drugs. R. 65. *See generally United States v. Lockwood,* 15 M.J. 1 (C.M.A. 1983); *United States v. Williams, supra* (Cook, J., dissenting); and *United States v. Daye,* 17 M.J. 555 (A.C.M.R.1983). Thus, subject matter jurisdiction existed over the offenses. We concur also with the military judge's ruling and findings with respect to appellant's *Alef* motion.

Accordingly, the findings and sentence, as approved on review below, are affirmed.