UNITED STATES

v.

Charles L. ANZALONE, 108
56 4523 Corporal (E–4),
U.S. Marine Corps.

NMCM 91 3214.

U.S. Navy–Marine Corps Court
of Military Review.

Decided 20 June 1994.

Richard T. McNeil, Civilian Defense Counsel.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT David K. Herlihy, JAGC, USNR, Appellate Government Counsel.

Before REED, MOLLISON and DeCICCO, JJ.

REED, Senior Judge:

The appellant is a Marine charged with a variety of offenses arising, primarily, out of his contact with a Federal Bureau of Investigation (FBI) agent who appellant believed was a Soviet Union intelligence officer. As a result of this contact, appellant was charged and convicted, despite his pleas, of attempted conspiracy to commit espionage, attempted violation of a lawful general order by failing to report contact with a person he believed to be a Soviet agent, two violations of a lawful general order by failing to report actual contact with Soviet members of the U.S.S.R. Embassy, two violations of Article 1121.2, U.S. Navy Regulations (1990) by improperly disclosing information about military forces to others and by wrongfully mailing similar information to others, attempted espionage on two occasions, 4 violations of 18 U.S.C. § 793 (espionage statute), and a violation of 18 U.S.C. § 1717, in violation of Articles 80, 92, 106a, and 134, Uniform Code of Military Justice [UCMJ], respectively, 10 U.S.C. §§ 880, 892, 906a, 934. Appellant was also found guilty of the wrongful possession and use of marijuana and adultery in violation of Articles 112a and 134, UCMJ, respectively,

**660**

10 U.S.C. §§ 912a and 934, but these offenses are unrelated to the attempted espionage. No assignment of error concerning these offenses is alleged, and we find none. Appellant was sentenced to reduction to pay grade E–1, confinement for 15 years, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

Appellant alleges numerous assignments of error regarding the espionage offenses and also attacks the jurisdiction of this court to act.[1] Generally, we find the assignments of error to be without merit, except in one noteworthy aspect, for we hold that attempted conspiracy is not a viable offense under the Uniform Code of Military Justice. We will discuss appellant's assignments of error, *seriatim.* Prior to that, a brief exposition of the facts is needed.

## FACTS

Appellant was a corporal assigned to Marine Wing Support Squadron 371 located at Marine Corps Air Station (MCAS), Yuma, Arizona. During mid-November 1990, appellant twice telephoned the Embassy of the Soviet Union. The Naval Investigative Service learned of the calls and initiated contact with appellant to determine if he posed a risk to national security. An FBI agent approached appellant posing as a Soviet intelligence officer named Mikhail (Mike) and a relationship between the two developed that resulted in most of the charges currently before this Court. As a result of telephone calls and an actual meeting between the two, the appellant gathered and transmitted to the undercover agent national defense information, which included, among other things, the procedures and operations of the Weapons/Ordnance Area guard, the characteristics and appearance of the identification badge needed to gain access to the Yuma flight line, which was a restricted area, and two communications/cryptographic manuals restricted "For Official Use Only."

1. I. THE EVIDENCE ADDUCED AT COURT–MARTIAL WAS LEGALLY AND FACTUALLY INSUFFICIENT TO SUPPORT THE FINDING OF GUILTY TO CHARGE II, SPECIFICATIONS 3 AND 4, CHARGE III, SPECIFICATION 2, AND CHARGE V, SPECIFICATIONS 2–6, BECAUSE NO EVIDENCE ESTABLISHED THAT APPELLANT WAS PREDISPOSED TO COMMIT THOSE CRIMES.

II. THE HEINE DOCTRINE (151 F.2d 813 (2d Cir.1945), *cert. denied,* 328 U.S. 833, 66 S.Ct. 975, 90 L.Ed. 1068 (1946)) PRECLUDES CONVICTION OF CHARGE II, SPECIFICATION 3 UNDER ARTICLE 92 IN THIS CASE BECAUSE THE INFORMATION CONVEYED BY APPELLANT WAS READILY AVAILABLE TO THE PUBLIC.

III. CHARGE I, SPECIFICATIONS 1 AND 2, FAIL TO STATE OFFENSES.

IV. THE REGULATION WHICH REQUIRED APPELLANT TO REPORT ANY AND ALL CONTACTS WITH COMMUNIST CITIZENS VIOLATES THE CONSTITUTION'S PROHIBITION AGAINST COMPELLED SELF–INCRIMINATION.

V. CHARGE II, SPECIFICATIONS 3 & 4, CHARGE III, SPECIFICATION 2 AND CHARGE V, SPECIFICATIONS 2, 3, 4, 5 AND 6 ARE MULTIPLICIOUS FOR FINDINGS PURPOSES BECAUSE THEY ALLEGE THE SAME CONDUCT.

VI. APPELLANT WAS DENIED HIS RIGHT TO A PUBLIC TRIAL IN VIOLATION OF THE SIXTH AMENDMENT.

VII. APPELLANT'S SENTENCE WAS INAPPROPRIATELY SEVERE.

VIII. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (Citations omitted.) BECAUSE THIS ERROR IS JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. (Citations omitted.)

IX. BECAUSE THIS COURT'S JUDGES WERE APPOINTED IN VIOLATION OF THE APPOINTMENTS CLAUSE, THIS COURT HAS NO POWER TO REVIEW APPELLANT'S CASE. (Citations omitted.)

X. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. (Citations omitted.) BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

XI. THIS COURT HAS NO JURISDICTION BECAUSE ITS JUDGES ARE NOT APPOINTED TO FIXED TERMS OF OFFICE.

XII. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES PETITIONER'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM.

ANALYSIS

I.

■ In his first assignment of error, appellant alleges that he was not predisposed to commit the espionage offenses, citing *Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), and was thus entrapped by the Government. We disagree with appellant.

Rule for Courts–Martial [R.C.M.] 916(g) provides that "[i]t is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." The first element is referred to as the inducement element and the second as the predisposition element. The evidence of record establishes for us, beyond any reasonable doubt, that the Government did not induce the misconduct with which we are herein concerned. In fact, the appellant initiated the contact with the Soviet Embassy and the Government followed-up only after learning of the initial contacts. Appellant had commenced his scheme to obtain a "scholarship," i.e., money, in return for information when the Government intervened.

Even if we were to find that the Government induced the misconduct, which we do not, we also find that the appellant was disposed to commit the offenses.

As the Court of Military Appeals has noted regarding the element of predisposition, this element

> may be shown circumstantially by introducing evidence of the following: accused merely afforded opportunity to commit the crime, *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958); a single invitation without any fraud or trickery, *United States v. Suter,* 21 USCMA 510, 515, 45 CMR 284, 289, 1972 WL 14176 (1972); informant not a friend of accused, *United States v. McGlenn,* 8 USCMA 286, 24 CMR 96, 1957 WL 4711 (1957); a profit motive, *United States v. Hebert,* 1 MJ 84 (CMA 1975); or a ready response to informant's initial sug-

gestion, *United States v. Williams,* 3 MJ 555 (ACMR 1977), *rev'd on other grounds,* 4 MJ 336 (CMA 1978).

*United States v. Cooper,* 35 M.J. 417, 425 (C.M.A.1992). Of course, as the U.S. Supreme Court noted in *Jacobson,* when "the defense of entrapment is at issue, ... the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at ——, 112 S.Ct. at 1540.

We have carefully examined transcripts of all of the conversations between the FBI agent and appellant, both those that occurred in person and those over the telephone, as well as the classified information that is a matter of record. We note that appellant made two telephone calls to the Soviet Embassy prior to being approached by an FBI agent posing as a Soviet intelligence officer. It is clear to us that appellant desired to obtain money in return for providing information to the Soviets. He did not notify military authorities of his contact with Soviet Embassy personnel, even though regulations required such notification. When approached by Mike, appellant quickly agreed to a surreptitious meeting, and readily provided information and knowledge he had of military organizations and operations and attempted to provide any additional information requested, including a flight line identification badge and cryptographic manuals.

The evidence of record establishes beyond any reasonable doubt that the criminal design to commit the offenses originated with appellant, that he was predisposed to commit espionage, and that he needed only the opportunity, which the FBI provided, to consummate the offense. *See United States v. Vanzandt,* 14 M.J. 332 (C.M.A.1982). We find no entrapment.

II.

In his second assignment of error, appellant alleges that the *Heine* [2] doctrine precludes a conviction under Article 92, UCMJ,

2. *United States v. Heine,* 151 F.2d 813 (2d Cir. 1945), *cert. denied,* 328 U.S. 833, 66 S.Ct. 975, 90 L.Ed. 1068 (1946).

as alleged in Charge II, Specification 3, because the information conveyed by appellant was readily available to the public. Mr. Heine was charged with a violation of 50 U.S.C. § 34, which deals with the unlawful disclosure of information affecting the national defense. In *Heine*, Judge Learned Hand noted that

it is obviously lawful to transmit any information about weapons and munitions of war which the services had themselves made public; and if that be true, we can see no warrant for making a distinction between such information, and information which the services have never thought it necessary to withhold at all. . . . The services must be trusted to determine what information may be broadcast without prejudice to the "national defense," and their consent to its dissemination is as much evidenced by what they do not seek to suppress, as by what they utter. Certainly it cannot be unlawful to spread such information within the United States; and, if so, it would be to the last degree fatuous to forbid its transmission to the citizens of a friendly foreign power.

*Id.* at 816. In *United States v. Richardson*, 30 M.J. 1239 (A.C.M.R.1990), *reversed in part*, 33 M.J. 127 (C.M.A.1991), the Army Court of Military Review noted that the conduct proscribed by the espionage statute did "not rest upon any security classification, but embraces any communicative matter 'relating to the national defense.' " *Richardson*, 30 M.J. at 1244. In its review, the Court of Military Appeals agreed:

The Court of Military Review found that the classification of the documents was not of decisional importance because "[t]he espionage statute is not worded so restrictively that it applies only to information bearing a national security classification." 30 MJ 1239, 1245 (1990). While that statement is true, the lack of security classifications places a burden on the Government to show that the information (1) is not of the type normally available to the public; (2) is of the type whose release would injure the United States; or (3) would be advantageous to a foreign government.

*Richardson*, 33 M.J. 127, 128–129 (asterisk footnote) (C.M.A.1991). Among the information revealed by appellant to the FBI agent was detailed information not available to the public about the guard duty at the ordnance storage facility, including the number and location of the guards. A further sampling of the information he revealed included the security clearances of the Marines working in a communications shop. The knowledge provided about the workings of the ordnance area would be of help to an enemy attempting to breach such an area. The security clearances of the communications personnel would indicate the sensitive nature of their work and their potential for providing classified information if they were compromised into assisting others with an interest inimical to the United States. Appellant also provided cryptological manuals which, the custodians indicated, were not available to the public and would not, upon request, be made available. He also provided the FBI agent a flight line badge that allowed a person access to the flight line during restricted times. We thus find this assignment to be without merit because the information provided by appellant was not available to the public, its release would injure the national security interests of the United States and such information would be advantageous to a foreign government.

### III.

■ In his third assignment of error appellant challenges the validity of a specification which charges as an offense an attempted conspiracy. Under Specification 1 of Charge I, appellant was charged with an attempt to conspire to commit espionage with one whom he believed to be a Soviet intelligence officer, but who was an FBI agent posing as a Soviet. It is charged as an attempt because, in military law, for a conspiracy to exist two or more people must participate, *United States v. Kidd*, 13 C.M.A. 184, 32 C.M.R. 184, 1962 WL 4476 (1962), and the other "conspirator" may not be a government agent since such agent is not in fact agreeing to commit the offense. *See United States v. LaBossiere*, 13 C.M.A. 337, 32 C.M.R. 337, 1962 WL 4498 (1962); *United States v. Cascio*, 16 C.M.R. 799, 1954 WL

2557 (A.F.B.R.1954), *petition denied,* 18 C.M.R. 333, 1955 WL 3337 (C.M.A.1955).

We have been unable to find any military or Federal case directly on point which discusses the viability of charging an attempted conspiracy[3] and neither counsel has cited any to us. We note that Article 81, UCMJ, 10 U.S.C. § 881, provides that "[a]ny person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct." We also note that Article 80(b), UCMJ, 10 U.S.C. § 880(b), provides that "[a]ny person subject to this chapter who attempts to commit any offense punishable by this chapter shall be punished as a court-martial may direct, unless otherwise specifically prescribed." Thus a simple reading of the statutes would imply that an attempted conspiracy would lie and we observe that the Manual for Courts–Martial, United States, 1984, Part IV, ¶ 5d, lists an attempt as a lesser include offense of conspiracy.

However, we do not believe this ends our inquiry because this analysis fails to consider the fundamental difference between preparatory, or inchoate offenses,[4] and substantive offenses. Attempt, solicitation, and conspiracy are usually characterized as preparatory offenses. Preparatory offenses are separate and distinct from substantive offenses. *See* Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law,* ¶ 6.1 (2d ed. 1986). Additionally, military law has recognized that conspiracy is a separate and distinct offense from the underlying substantive offense. *United*

States *v. Washington,* 1 M.J. 473 (C.M.A. 1976); *United States v. Yarborough,* 1 C.M.A. 678, 5 C.M.R. 106, 1952 WL 2074 (1952); MCM, 1984, Part IV, ¶ 5c(8).

Our examination of the Manual for Courts–Martial and the punitive articles listed therein leads us to the conclusion that Congress through legislation, and the President through implementation, has established a hierarchy of crimes. This spectrum of criminal conduct ranges from solicitation through the actual commission of the offense and leads to our conclusion that an attempted conspiracy is not an offense under the Uniform Code of Military Justice. The spectrum might be viewed as follows:

Solicitation >> Conspiracy >> Attempt >> Substantive Crime

Solicitation occurs at the very outset of a criminal venture and consists of requesting seriously another person to commit an offense. *See* MCM, 1984, Part IV, ¶ 6. However, soliciting another to commit an offense does not constitute an attempt. MCM, Part IV, ¶ 4c(4). The offense of solicitation is complete when the solicitation is made or advice is given with the specific wrongful intent to influence another or others to commit the offense. "It is not necessary that the person or persons solicited or advised agree to or act upon the solicitation or advice." MCM, Part IV, ¶ 6c(1).

In our hierarchial analysis, conspiracy may be said to occur next. When the person solicited agrees to participate in a concerted action with the person soliciting to commit a crime, then a conspiracy is formed. When

**3.** The Government points to an Air Force case, *United States v. Church,* 29 M.J. 679 (A.F.C.M.R. 1989), aff'd, 32 M.J. 70 (C.M.A.1991), *cert. denied,* 501 U.S. 1231, 111 S.Ct. 2853, 115 L.Ed.2d 1021 (1991), to show that such a specification has some validity. This case is of little import to the issue we must decide since it involved an attempted conspiracy specification that was dismissed as multiplicious with a charge of attempted premeditated murder, and the Court therein did not comment on the viability of an attempted conspiracy charge.

    The Government also cites *United States v. Franks,* 511 F.2d 25 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975), wherein the defendant claimed error in the admission of evidence of six other crimes, particu-

larly evidence that he attempted to conspire to kill a government witness. There the court said that "[e]vidence of such attempted conspiracy, with proper cautionary instruction, is admissible as showing 'consciousness of guilt.' " *Id.,* 511 F.2d at 36. There is little discussion of the attempted conspiracy and the Court of Appeals may be talking about a solicitation, vice attempted conspiracy. Again we regard this case as having little significance.

**4.** An inchoate crime is defined as "[a]n incipient crime which generally leads to another crime.... The Model Penal Code classifies attempts, solicitation and conspiracy as such. §§ 5.01–5.03." Black's Law Dictionary 761 (6th ed. 1990).

an overt act is committed by any of the persons involved, the crime of conspiracy is complete. *See* MCM, Part IV, ¶ 5a. Any overt act is enough, no matter how preliminary or preparatory in nature, as long as it is a manifestation that the agreement is being carried out. MCM, Part IV, ¶ 5c(4)(b).

An attempt, itself, occurs on the very threshold of completion of the substantive crime. Attempt requires an overt act done with the specific intent to commit the offense. Unlike conspiracy, "[t]he overt act required goes beyond preparatory steps and is a direct movement toward the commission of the offense." MCM, Part IV, ¶ 4c(2). The final step in this hierarchial analysis is the actual commission of the offense.

Our analysis is supported by the very limited state case law we have been able to find and by the Model Penal Code. A state case from Arizona, *State v. Sanchez*, 174 Ariz. 44, 846 P.2d 857 (App.Div. 1, 1993), is one of the few cases we have discovered that analyzes an attempted conspiracy in depth. In *Sanchez*, the Arizona Court of Appeals noted that an examination of the Arizona statute defining conspiracy "shows that 'offense' in the context of a preparatory crime has a meaning narrower than its general definition. Within this statute, 'offense' refers to the criminal object of the conspiratorial agreement—that is, to the intended substantive crime." *Id.* at 859. The same analysis applies equally well to the military statute.

This interpretation is buttressed by language in the MCM, for it indicates that "[a]n act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense." MCM, Part IV, ¶ 4a. Like the Arizona appellate court, we believe that "[c]onstruing 'offense' in that sentence to include conspira-

cy would be absurd, since no course of criminal conduct is 'planned to culminate' short of its ultimate object." *Sanchez* at 860.[5] The Model Penal Code supports this conclusion by providing, in pertinent part:

Section 5.01. Criminal Attempt.

(1) *Definition of Attempt.* A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposefully engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) . . .

(c) purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

. . . . .

(3) *Conduct Designed to Aid Another in Commission of a Crime.* A person who engages in conduct designed to aid another to commit a crime that would establish his complicity under Section 2.06 if the crime were committed by such other person, is guilty of an attempt to commit the crime, although the crime is not committed or attempted by such other person.

Model Penal Code § 5.01 (1985).

The commentary to the attempt provision of the Model Penal Code states: "The Model Code applies to attempts to commit all *substantive* crimes without limitation." (Emphasis added.) Model Penal Code, § 5.01 Comment, *reprinted in ALI Model Penal*

5. We also note the confusion that results when combining the various "overt acts" required in conspiracy and attempt. For instance, in an attempt, the overt act must directly tend to effectuate the intended crime and must be more than mere preparation to commit the offense. MCM, Part IV, ¶ 4c. In a conspiracy, however, it matters not how preliminary or preparatory in nature the overt act is, as long as it is a manifesta-

tion that the agreement is being executed. *United States v. Collier*, 14 M.J. 377 (C.M.A.1983). Where there is only mere preparation, there may be no attempt, but there may be, in certain circumstances, sufficient evidence to sustain a solicitation (Article 134, UCMJ, 10 U.S.C. § 934) conviction. *United States v. Jackson*, 5 M.J. 765 (A.C.M.R.1978), *petition denied*, 6 M.J. 27 (C.M.A.1978).

*Code and Commentaries* at 362 (1985) (hereinafter *Commentaries*).[6]

The Model Penal Code defines conspiracy as follows:

(1) *Definition of Conspiracy.* A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(a) agrees with such other person or persons that they or one or more of them will engage in conduct that constitutes such crime or an attempt or solicitation to commit such crime; or

(b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.[7]

Model Penal Code, § 5.03. As the Explanatory Note to § 5.03 indicates

Guilt as a conspirator is measured by the situation as the actor views it; he must have the purpose of promoting or facilitating a criminal offense, and with that purpose must agree (or believe that he is agreeing) with another that they will engage in the criminal offense or in solicitation to commit it. It also is sufficient if the agreement is to aid another in the planning or commission of the offense, or an attempt or solicitation to commit it.

Model Penal Code § 5.03, Comment, *reprinted in Commentaries* at 384. Furthermore, "[a]s an inchoate crime, conspiracy fixes the point of legal intervention at agreement to commit a crime, or at agreement coupled with an overt act which may, however, be of very small significance. *Conspiracy thus reaches further back into preparatory conduct than attempt....*" Model Penal Code,

§ 5.03 Comment, *reprinted in Commentaries* at 387 (Emphasis added).

This analysis leads to our conclusion that alleging an attempted conspiracy fails to state an offense under the Uniform Code of Military Justice. A conspiracy involves an agreement among conspirators to commit a substantive offense. An attempt is an effort to commit the substantive crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in the full consummation of the act attempted, but which, in fact does not bring to pass the party's ultimate design. Viewing such offenses in this light, an offense alleging an attempted conspiracy cannot stand. Accordingly, we will order dismissed, in our decretal paragraph, Specification 1 of Charge I, as failing to state an offense.

■ We do not see the same infirmity regarding Specification 2 of Charge I alleging an attempt to violate a lawful general order. Factual impossibility is not a defense to a specification charging an attempt. *See United States v. Thomas,* 13 C.M.A. 278, 32 C.M.R. 278, 1962 WL 4490 (1962). Accordingly, we affirm that finding.

■ Nor do we believe that a regulation which requires appellant to report contacts with communist citizens violates the U.S. Constitution's prohibition against self-incrimination. The regulation does not require the servicemember to report the nature of the contact or any criminal conduct that may have resulted. Rather, individuals are required only to report contacts. Such does not violate any Fifth Amendment rights. *See United States v. Kelliher,* 35 M.J. 320 (C.M.A.1992).

6. One of the questions frequently litigated is whether there can be an attempt to attempt. As an abstract proposition of law the construction has been condemned by the majority of cases considering the issue, and it seems as a matter of sound analysis that the construction is not necessary. An attempt to attempt can always be considered a more remote attempt to commit the same substantive crime, provided, of course, that the conduct is sufficient to meet the basic test of liability. Model Penal Code, § 5.01, Comment, *reprinted in Commentaries* at 363 (footnote omitted).

7. The Model Penal Code has adopted the "Unilateral Approach" to conspiracies which makes it immaterial to the guilt of a conspirator whose culpability has been established that the person with whom he conspired has not been or cannot be convicted. Traditional law, to include military law, has held otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none. The "unilateral" approach has been followed in many of the recently revised state codes. *See* Model Penal Code § 5.03, Comment, *reprinted in Commentaries* at 399 n. 47.

**666**

In his fifth assignment of error, appellant argues that Charge II, Specifications 3 and 4, Charge III, Specification 2 and Charge V, Specifications 2, 3, 4, 5, and 6 are multiplicious for findings purposes because they allege the same misconduct. However, these offenses are composed of different statutory elements. In the absence of Congressional intent to the contrary, offenses composed of differing elements are not multiplicious. *United States v. Teters,* 37 M.J. 370 (C.M.A.1993). Even if the offenses were multiplicious, no relief would be warranted because the military judge found all the espionage offenses multiplicious for sentencing.

In his sixth assignment of error appellant alleges he was denied his right to a public trial in violation of the Sixth Amendment since the military judge periodically excluded the public from the proceedings. We note that in order to close a criminal trial to the public "the party seeking closure must advance an overriding interest that is likely to be prejudiced; the closure must be narrowly tailored to protect that interest; the trial court must consider reasonable alternatives to closure; and it must make adequate findings supporting the closure to aid in review." *United States v. Hershey,* 20 M.J. 433, 436 (C.M.A.1985), *cert. denied.* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986) (citing *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). Each of these criteria was met here. The Government established the overriding interests and the likelihood of prejudice through affidavits. The trial was closed only for very limited periods of time and then only when the trial or defense counsel anticipated classified matters would be discussed. Only 79 pages of the 479 page record of trial transcript concern periods when the court was closed to the public. We find the military judge was justified in his actions when closing the court for short, but necessary, periods of time. *United States v. Travers,* 25 M.J. 61 (C.M.A. 1987).

The remaining assignments of error have previously been decided against the contentions of appellant. *United States v. Graf,* 35 M.J. 450 (C.M.A.1992); *Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994); *United States v. Mitchell,* 39 M.J. 131 (C.M.A.1994).

Accordingly, the finding of guilty to Specification 1 of Charge I is set aside and that specification is ordered dismissed. Because of the military judge's multiplicity holding, no reassessment is required. Moreover, we find the sentence appropriate for the offenses of which the appellant now stands convicted. The remaining findings, and the sentence, as approved on review below, are affirmed.

MOLLISON, Senior Judge, and DeCICCO, J., concur.