UNITED STATES

v.

**Airman William G. RIDDLE, FR284–70–9339, United States Air Force.**

**ACM 30107.**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 29 May 1992.

Decided 14 Oct. 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock, Major George F. May, Major Marc A. Fox, and Major Michael C. Barrett.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Captain Timothy G. Buxton.

Before DIXON, PEARSON, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

PEARSON, Judge:

In a bench trial, the military judge convicted appellant, contrary to his pleas, of attempting to conspire with Rebecca M. Petrie to steal military pay entitlements by falsely claiming that they were married, attempting to knowingly sign various official documents falsely stating he was married, and forging his squadron section commander's signature to a basic allowance for subsistence (BAS) form. Violations of Articles 80 and 123, UCMJ, 10 U.S.C. §§ 880 and 923. The military judge sentenced appellant to a bad-conduct discharge, 8 months confinement, and reduction to E–1, which the convening authority approved.

Appellant claims now, as he did at trial, that the evidence is insufficient to prove his guilt of the attempt offenses because he was legally married to Rebecca by common law, attempted conspiracy is not an offense, and the evidence is insufficient to prove the forgery because the prosecution failed to call a handwriting expert. We disagree and affirm.

## FACTS

On February 20, 1992, Air Force officials at Shaw Air Force Base, South Carolina, charged appellant with stealing pay entitlements; conspiring with Ms. Petrie to do so by altering her brother's Ohio marriage certificate to make it falsely appear she and appellant were married on April 20, 1991; knowingly signing various official documents falsely stating he was married; and forging his commander's signature to a form to receive back BAS pay as of April 20, 1991. The offenses spanned the period from May 1 to October 7, 1991, the date appellant and Ms. Petrie entered into a formal marriage ceremony in Sumter, South Carolina. The charges were referred to trial on March 21, 1992.

Appellant retained a local civilian lawyer, Mr. John McMillian, to represent him on the criminal charges. Shortly thereafter, Mr. McMillian filed an action in South Carolina Family Court on behalf of Ms. Petrie asserting she and appellant were married under state common law in 1990. Appellant initially filed an answer to the proceeding representing himself but subsequently retained another local lawyer, Mr. Barry W. Streeter, to represent him.

On April 21, 1992, appellant and Ms. Petrie, along with their respective civilian attorneys, appeared in Family Court and persuaded the state judge to issue an order declaring

the couple validly married under state common law as of October 6, 1990. With Family Court order in hand, Mr. McMillian represented appellant at the court-martial. Mr. McMillian argued that the Family Court order precluded conviction of any offense based on a false claim of marriage. Mr. McMillian also presented a few personal papers, like airline tickets and bills, where appellant and Ms. Petrie held themselves out as Mr. and Mrs. Riddle in August and September 1991.

The prosecutor countered that the common law marriage was a sham and presented evidence to prove so. In this regard, the prosecutor presented evidence that (1) Ms. Petrie didn't even move to South Carolina until July 1991, (2) appellant lived in the base dormitory until then, (3) the formal marriage on October 7, 1991, didn't take place until 5 days after Air Force investigators interviewed the couple about stealing pay entitlements and benefits through false claims of marriage, (4) both appellant and Ms. Petrie told investigators they were not married and appellant had altered a marriage certificate to falsely show they were married to receive more pay, (5) they referred to each other as "boyfriend"/"girlfriend" during the investigators' interview, (6) Ms. Petrie told investigators appellant had "doctored up a BAS form" to receive "backpay," (7) they didn't file joint federal tax returns as a married couple for 1990 and 1991 until April 1992 when they filed amended returns for those years, and (8) on appellant's original 1991 return, he filed as a "single" person.

The prosecutor also provided a verbatim transcript of the Family Court proceeding which showed that no one, including the attorneys, made the state judge aware of the pending court-martial or any of the above facts, particularly the altered Ohio marriage certificate. On the contrary, according to the transcript, appellant told the judge that he and Ms. Petrie "started living together in October of 1990 as husband and wife." Mr. McMillian also told the Family Court judge that the couple filed joint federal and state tax returns for 1991 when in fact they filed an amended return shortly before the proceeding.

The military judge acquitted appellant of larceny and several specifications of signing false official documents. The military judge also acquitted appellant of conspiracy and the remaining specifications of signing false official documents, but convicted him of the lesser-included offense of attempting each of those offenses. Before announcing his verdict, the military judge *sua sponte* stated he considered the defense of mistake and gave full faith and credit to the Family Court order.

## ATTEMPT VERSUS COMMON LAW MARRIAGE

■ An accused's actual common law marriage, or honest belief that such a marriage exists, is a complete defense to a charge of stealing married rate pay entitlements, conspiring to do so, or signing official documents falsely stating a marriage exists. If the accused is in fact married, whether by official ceremony or common law, it is legally impossible for the accused to commit the offenses. In a similar vein, if the accused honestly believes a marriage exists, whether by official ceremony or common law, the accused lacks the specific intent or knowledge required for the offenses. *United States v. Allen,* 27 M.J. 234 (C.M.A.1988); *United States v. Groves,* 23 M.J. 374 (C.M.A. 1987). We look first at the validity of the marriage.

■ In resolving the issue of an accused's marital status, a court-martial must give full faith and credit to a state court order determining the marital status of one of its citizens. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738; *Allen* 27 M.J. at 238–239. In this case, the military judge did so and acquitted appellant of numerous offenses. We likewise give full faith and credit to the South Carolina order even though it is clear to us that appellant's common law marriage was a sham and he and his "wife" selectively presented the facts to the Family Court judge who did the best he could with what he had. In this regard, a court-martial is not the proper forum for a government attack on a state court domestic relations order. *Compare Allen with United States v. Bolden,* 28 M.J. 127 (C.M.A.1989) (upholding government attack

on sham marriage ceremony versus attack on state judicial proceeding).

 However, even if it is factually or legally impossible for an accused to commit an offense under the circumstances as they actually exist, the accused may be convicted of an attempt to commit that offense, if he would be guilty of the completed crime had the circumstances been as he believed them to be. *United States v. Thomas*, 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962). For example, one who possesses sugar, believing it to be cocaine, is guilty of attempted possession of cocaine. *United States v. Dominquez*, 7 U.S.C.M.A. 485, 22 C.M.R. 275 (1957). Thus, a state court decree of marriage won't totally nullify an accused's criminal intent to commit crimes based on marital status if the accused in fact believes he or she isn't married at the time of the offense. Instead, the accused may be convicted of the lesser-included offense of attempt. *See* Article 80, UCMJ; *Allen*, 27 M.J. at 239–241 (Cox, J., concurring in part and dissenting in part).

We conclude the prosecution's evidence tending to show that the common law marriage was a sham was admissible to show appellant's state of mind regarding the existence of the marriage. We find the evidence overwhelming that appellant did not believe he and Ms. Petrie were married to one another when he signed false documents stating that they were or conspired with her to steal pay entitlements by submitting a false marriage certificate. In essence, the crime of attempt punishes those who act of evil heart—we find beyond a reasonable doubt, as did the military judge, that appellant so acted. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). Which brings us to the next issue of whether attempted conspiracy is a crime under military law.

## ATTEMPTED CONSPIRACY

 In the only reported military case discussing this issue, the Navy–Marine Corps Court of Military Review recently held that attempted conspiracy is not an offense under the Uniform Code of Military Justice. The Court reasoned that attempt and conspiracy are both preparatory offenses as opposed to substantive offenses, and the overt act required for an attempt goes beyond the preparatory steps necessary to make out a conspiracy. *United States v. Anzalone*, 40 M.J. 658 (N.M.C.M.R.1994). While we believe that Court may have reached the right factual result in *Anzalone* in performing its statutory review duties, we decline to adopt its rationale and legal holding. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

We conclude that Congress' intent is controlling on whether attempted conspiracy is an offense as a matter of law, *Anzalone* notwithstanding (as well as a few constitutional limitations not relevant here). *Cf. United States v. Gates*, 40 M.J. 354 (C.M.A. 1994) (affirming conviction for consensual sodomy between heterosexual adults in private); *United States v. Fagg*, 34 M.J. 179 (C.M.A.1992) (same). Congress has specified that an attempt is a lesser-included offense of conspiracy and attempted conspiracy is an offense. Articles 79 and 80, UCMJ, 10 U.S.C. §§ 879, 880. While appellant may not be criminally liable for conspiring to steal that to which he is entitled by law or regulation, Congress made him criminally liable for attempting to do so if he in fact does not believe he is entitled to it and commits the required overt act, in this case submitting an altered marriage certificate. *Cf. Allen*, (Cox, J., concurring in part and dissenting in part). Consequently, we affirm the conviction.

## FORGERY CONVICTION

 Finally, we are unaware of any legal requirement for the government to prove forgery only with a handwriting expert, although the use of an expert is usually a mark of solid legal practice in preparing such a case. Once again, we find the evidence of appellant's guilt overwhelming. Ms. Petrie testified that appellant told her he "doctored up a BAS form" to receive "backpay." Appellant's section commander testified that he did not sign the BAS form in question awarding appellant "backpay."

## CONCLUSION

We conclude the findings and sentence are correct in law and fact, and no error prejudi-

cial to appellant's substantial rights occurred. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge DIXON concurs.

Judge BECKER (concurring in part and dissenting in part):

I agree with the well-reasoned opinion of the United States Navy–Marine Corps Court of Military Review in *United States v. Anzalone*, 40 M.J. 658 (NMCMR 1994), holding that "attempted conspiracy" is not an offense under the Uniform Code of Military Justice. Accordingly, I would set aside the findings of guilty and dismiss Charge II and its specification. I would affirm the remaining findings of guilty.

I have reservations about affirming the findings of guilty to specifications 3–6 of Charge III (attempted false official statements). Because the state court order retroactively validated the accused's common law marriage to a date prior to the official statements, it was legally impossible for the accused to have committed the offense of *false* official statement. *See United States v. Allen*, 27 M.J. 234 (C.M.A.1988). The only reason the accused may be convicted of *attempting* to make false official statements is the Court of Military Appeals' decision in *United States v. Thomas*, 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962). In that case, the court held that Congress had intended Article 80, UCMJ,[1] to punish conduct as an attempt to commit an offense, even if it was legally impossible for the accused to have committed the substantive offense. I question this conclusion. While some commentators may criticize the distinction between legal and factual impossibility as they relate to "attempt" crimes, there can be no question—as the *Thomas* court conceded—that the consensus of authority at the time Congress passed Article 80 was that the legal impossibility of committing a substantive offense also prevented conviction for an attempt to commit that offense. *Thomas*, 32 C.M.R. at 283. The proper basis for construing a UCMJ article is the common law at the time of its enactment. *United States v. Thompson*, 32

M.J. 65, 67 (C.M.A.1991) (Sullivan, C.J., concurring), citing *United States v. Knight*, 15 M.J. 202, 205 (C.M.A.1983), and *United States v. Kluttz*, 9 U.S.C.M.A. 20, 25 C.M.R. 282, 284 (1958). *See also United States v. Mervine*, 26 M.J. 482, 485 (C.M.A.1988) (Everett, C.J., concurring); *United States v. Banta*, 26 M.J. 109, 111 (C.M.A.1988); *United States v. Acevedo–Velez*, 17 M.J. 1, 6–7 (C.M.A.1983); and *United States v. Metcalf*, 16 U.S.C.M.A. 153, 36 C.M.R. 309, 314–315 (1966). *Cf. United States v. Burroughs*, 12 M.J. 380, 382 n. 3 (C.M.A.1982). My review of the legislative history of the Code reveals no evidence Congress intended Article 80 to modify the common law of attempts. Absent an expression of such intent, I believe Article 80 incorporates the common law doctrine that legal impossibility of committing an offense also negates conviction of an attempt to commit that offense.

It makes little sense to me to hold someone criminally liable for *attempting* to commit an offense which, under the circumstances, it is legally impossible for him to have committed. I believe the United States Court of Appeals for the Armed Forces (as the Court of Military Appeals has been recently renamed) should revisit this issue. Although I disagree with *Thomas*, that decision is *stare decisis* and I defer to it until it may be overruled. Accordingly, I would affirm the appellant's convictions for attempted false official statements.

I am fully aware that my views on "attempted conspiracy" and legal impossibility would provide the appellant with yet another legal "escape hatch" to avoid complete responsibility for what the evidence shows to have been a deliberate scheme to defraud the United States. However, the military judge accorded full faith and credit to the state court decree despite evidence that it had been obtained by fraud, and therefore acquitted the appellant of the substantive allegations. These findings of not guilty, of course, are final. In seeking to fashion a form of justice for this young thief from the military judge's attempt convictions, we should be mindful of Justice Harlan's time-honored ad-

---

1. 10 U.S.C. § 880 (1994).

monition to "take care, for the general good of the community, that hard cases do not make bad law." *United States v. Clark,* 96 U.S. 37, 49, 24 L.Ed. 696 (1878) (Harlan, J., dissenting) (quoting *East India Co. v. Paul,* 7 Moo. 85, 111, 13 Eng.Rep. 811, 821 (P.C. 1849)). I believe *Thomas* made bad law in casting aside the legal impossibility doctrine to affirm an attempt conviction in a "hard case." [2] I believe the majority holding in this "hard case" also makes bad law by recognizing "attempted conspiracy" as an offense.

Because I would set aside the appellant's conviction for attempted conspiracy, I would reassess his sentence. I would not approve a sentence in excess of a bad-conduct discharge, confinement for six months, and reduction to E-1.

**2.** In *Thomas,* two sailors had been convicted of attempted rape after their court-martial concluded their victim had already died of a heart ailment at the time of penetration, thus preventing their conviction for rape—in the words of the court, "a sordid and revolting picture." 32 C.M.R. at 280.