UNITED STATES, Appellee

v.

William G. RIDDLE, Airman U.S.
Air Force, Appellant.

No. 95–0184.
Crim. App. No. 30107.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 6, 1995.

Decided Aug. 29, 1996.

For Appellant: *Colonel Jay L. Cohen* (argued); *Captain Eric N. Eklund* (on brief).

For Appellee: *Lieutenant Colonel Michael J. Breslin* (argued); *Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, Captain Timothy G. Buxton* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

In May of 1992, appellant was tried by a general court-martial composed of a military judge sitting alone at Shaw Air Force Base, South Carolina. Contrary to his pleas, appellant was found guilty of attempted conspiracy to steal certain military pay entitlements; attempted signing of a false official statement (4 specifications); and forgery of his squadron section commander's signature on an official government form, in violation of Articles 80 and 123, Uniform Code of Military Justice, 10 USC §§ 880 and 923, respectively. He was sentenced to a bad-conduct discharge, 8 months' confinement, and reduction to pay grade E–1. On August 11, 1992, the convening authority approved the sentence. The Court of Criminal Appeals affirmed on October 14, 1994. 41 MJ 673.

On March 23, 1995, this Court granted review on the following issue of law:

WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW IN FINDING APPELLANT GUILTY OF THE LESSER–INCLUDED OFFENSES OF ATTEMPTED CONSPIRACY AND ATTEMPTED FALSE OFFICIAL STATEMENT.

We hold that the military judge did not err in finding appellant guilty of attempted conspiracy to commit larceny and attempted making of false official statements. *See United States v. Anzalone,* 43 MJ 322 (1995); *United States v. Thomas,* 13 USCMA 278, 32 CMR 278 (1962).

The court below with its special factfinding powers found the following facts concerning the granted issue:

On February 20, 1992, Air Force officials at Shaw Air Force Base, South Carolina, charged appellant with stealing pay entitlements; conspiring with Ms. Petri to do so by altering her brother's Ohio marriage certificate to make it falsely appear she and appellant were married on April 20, 1991; knowingly signing various official documents falsely stating he was married; and forging his commander's signature to a form to receive back BAS [basic allowance for subsistence] pay as of April 20, 1991. The offenses spanned the period from May 1 to October 7, 1991, the date appellant and Ms. Petri entered into a formal marriage ceremony in Sumter, South Carolina. The charges were referred to trial on March 21, 1992.

Appellant retained a local civilian lawyer, Mr. John McMillian, to represent him on the criminal charges. Shortly thereafter, Mr. McMillian filed an action in South Carolina Family Court on behalf of Ms. Petri asserting she and appellant were married under state common law in 1990. Appellant initially filed an answer to the proceeding representing himself but subsequently retained another local lawyer, Mr. Barry W. Streeter, to represent him.

On April 21, 1992, appellant and Ms. Petri, along with their respective civilian attorneys, appeared in Family Court and persuaded the state judge to issue an order declaring the couple validly married under state common law as of October 6, 1990. With Family Court order in hand, Mr. McMillian represented appellant at the court-martial. Mr. McMillian argued that the Family Court order precluded conviction of any offense based on a false claim of marriage. Mr. McMillian also presented a few personal papers, like airline tickets and bills, where appellant and Ms. Petri held themselves out as Mr. and Mrs. Riddle in August and September 1991.

The prosecutor countered that the common law marriage was a sham and presented evidence to prove so. In this regard, the prosecutor presented evidence that (1) Ms. Petri didn't even move to South Carolina until July 1991, (2) appel-

lant lived in the base dormitory until then, (3) the formal marriage on October 7, 1991, didn't take place until 5 days after Air Force investigators interviewed the couple about stealing pay entitlements and benefits through false claims of marriage, (4) both appellant and Ms. Petri told investigators they were not married and appellant had altered a marriage certificate to falsely show they were married to receive more pay, (5) they referred to each other as "boyfriend"/"girlfriend" during the investigators' interview, (6) Ms. Petri told investigators appellant had "doctored up a BAS form" to receive "backpay," (7) they didn't file joint federal tax returns as a married couple for 1990 and 1991 until April 1992 when they filed amended returns for those years, and (8) on appellant's original 1991 return, he filed as a "single" person.

The prosecutor also provided a verbatim transcript of the Family Court proceeding which showed that no one, including the attorneys, made the state judge aware of the pending court-martial or any of the above facts, particularly the altered Ohio marriage certificate. On the contrary, according to the transcript, appellant told the judge that he and Ms. Petri "started living together in October of 1990 as husband and wife." Mr. McMillian also told the Family Court judge that the couple filed joint federal and state tax returns for 1991 when in fact they filed an amended return shortly before the proceeding.

The military judge acquitted appellant of larceny and several specifications of signing false official documents. The military judge also acquitted appellant of conspiracy and the remaining specifications of signing false official documents, but convicted him of the lesser-included offense of attempting each of those offenses. Before announcing his verdict, the military judge *sua sponte* stated he considered the defense of mistake and gave full faith and credit to the Family Court order. 41 MJ at 674–75.

___

Appellant asserts that the military judge in his case erred as a matter of law in finding him guilty of the lesser-included offenses of attempted conspiracy to steal married military pay entitlements and the attempted making of false official statements concerning his marital status. He initially contends that attempted conspiracy is not an offense prohibited by the Uniform Code of Military Justice. In the alternative, he asserts that he could not be found guilty of any of the above attempt crimes because of insufficient evidence in the record. He argues that the record showed only that he was married and believed himself married at the time he applied for the married military pay entitlements and made official statements concerning his married status. He cites two decisions from the appellate courts below as support for his arguments. *See United States v. Anzalone,* 40 MJ 658 (NMCMR 1994), and *United States v. Roberts,* 33 MJ 819, 820 (NMCMR 1991).

I

The initial question raised in this case is whether attempted conspiracy to commit a military crime is an offense under the Uniform Code of Military Justice. *See generally* Robbins, *Double Inchoate Crimes,* 26 Harv.J. on Legis. 1, 55, 71–72 (1989) (most courts have rejected attempted conspiracy as a crime). *Cf. United States v. Yu–Leung,* 51 F.3d 1116, 1122 n. 3 (2d Cir.1995) ("an attempted conspiracy—a creature unknown to federal criminal law"); *but see United States v. Mowad,* 641 F.2d 1067, 1074 (2d Cir.1981); *United States v. Clay,* 495 F.2d 700, 710 (7th Cir.1974). As noted above, appellant was found guilty of such an offense, *i.e.,* attempted conspiracy to steal military pay entitlements in violation of Article 80. The specification which formed the basis for this finding states:

SPECIFICATION: In that [appellant] did, on or about 1 May 1991, at Shaw Air Force Base, South Carolina, attempt to conspire with REBECCA M. PETRI to commit an offense under the Uniform Code of Military Justice, to wit: larceny of United States currency of some value,

property of the United States Government, and in order to [e]ffect the object of the conspiracy, the said AIRMAN WILLIAM G. RIDDLE and REBECCA M. PETRI did obtain a copy of REBECCA M. PE-TRI'S brother's marriage certificate and alter it to falsely submit to Air Force authorities that AIRMAN WILLIAM G. RIDDLE and REBECCA M. PETRI were married, thus allowing AIRMAN WIL-LIAM G. RIDDLE to receive additional military pay entitlements.

Appellant challenges this finding on the basis of the decision of the then-Court of Military Review in *United States v. Anzalone*, 40 MJ 658 (1994), and several state court decisions cited therein. He asserts that attempted conspiracy is not a military crime, so the above specification fails to state a criminal offense. The decision by the Navy–Marine Corps Court of Military Review relied on by appellant, however, was reversed by this Court in *United States v. Anzalone*, 43 MJ 322 (1995). While the judges of this Court in *Anzalone* split on the precise Codal provision under which such conduct could be prosecuted, *all agreed that such conduct was a military criminal offense.*

In this regard, we further note that Article 80 states:

### § 880. Art. 80. Attempts

(a) An act, done *with specific intent to commit an offense under this chapter,* amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

(b) Any person subject to this chapter who attempts to commit *any offense punishable by this chapter* shall be punished as a court-martial may direct, unless otherwise specifically prescribed.

(c) Any person subject to this chapter may be convicted of an attempt to commit an offense although it appears on the trial that the offense was consummated.

(Emphasis added.)

Clearly, the language of this statute is broad and makes no distinction between a conspiracy or other inchoate offense and any other type of military offense as the lawful subject of an attempt offense. *See* Note, *Conspiracy: Statutory Reform Since the Model Penal Code* [hereafter Note], 75 Col. L.Rev. 1122, 1133 (1975); *Developments in the Law–Criminal Conspiracy,* 72 Harv. L.Rev. 920, 927 n. 35 (1959); *see generally* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.4 at 72–73 (1986). In addition, no other statute or case law from this Court precludes application of Article 80 to a conspiracy offense as prohibited in Article 81, UCMJ, 10 USC § 881. *See* Robbins, *Double Inchoate Crimes, supra* at 35 n. 153, 76; *see also* Note, *supra,* 75 Col.L.Rev. at 1134 n. 61; *cf. State. v. Sanchez,* 174 Ariz. 44, 846 P.2d 857, 861 (App.1993). Finally, conviction of an attempt under Article 80 is particularly appropriate where there is no general solicitation statute in the jurisdiction or a conspiracy statute embodying the unilateral theory of conspiracy. *See* Robbins, *Double Inchoate Crimes, supra* at 91.* Accordingly, we reject appellant's argument that he was not found guilty of a crime under the Uniform Code of Military Justice.

### II

Appellant next argues that the evidence admitted in his case does not legally support the military judge's findings of guilty to any of the attempt offenses noted above. *See generally United States v. Harper,* 22 MJ 157, 161 (CMA 1986) (test for legal sufficiency of evidence requires "some legal and competent evidence from which a court-martial

---

* It has been said: "The double inchoate offense of attempt to conspire is unnecessary in those jurisdictions that have adopted either a solicitation statute, a conspiracy statute that embodies the unilateral theory of conspiracy, or both." Robbins, *Double Inchoate Crimes,* 26 Harv.J. on Legis. 1, 91 (1989). There is no general solicitation statute in the military (*cf.* Art. 82, Uniform Code of Military Justice, 10 USC § 882, *but see* Art. 134, UCMJ, 10 USC § 934, and ¶ 105, Part IV, Manual for Courts–Martial, United States, 1984) and this jurisdiction has not as yet adopted a unilateral approach to its conspiracy statute. *See United States v. Anzalone,* 43 MJ 322, 326 ¶ 18 (1995) (Gierke and Cox, JJ, concurring in the result).

may find or infer beyond a reasonable doubt those facts required by law for conviction"). He contends that not only was he married at the time of the charged offenses but "the entire case demonstrates that he believed himself to be" married at those times. Final Brief at 10. He argues, therefore, that the record does not show he ever intended to do an act or cause a result which was a crime, *i.e.*, he did not intend to acquire unauthorized funds from the Government or to deceive the Government.

■ Article 80 prohibits attempts to commit "an offense under" the Uniform Code of Military Justice. On its face, it provides for no defense that the crime attempted could not factually or legally be committed by an accused under the circumstances of his case. This Court has expressly rejected these defenses on several occasions. *See United States v. Thomas*, 13 USCMA at 286, 32 CMR at 286; *United States v. Dominguez*, 7 USCMA 485, 22 CMR 275 (1957); *cf. Grill v. State*, 337 Md. 91, 651 A.2d 856 (1995). In a more recent case, a majority of this Court found it unnecessary to revisit this question. *See United States v. Allen*, 27 MJ 234, 239 n. 4 (CMA 1988). Our general rule is that an accused should be treated in accordance with the facts as he or she supposed them to be. *United States v. Thomas, supra. See* para. 4c(3), Part IV, Manual for Courts–Martial, United States, 1984: "A person who purposely engages in conduct which would constitute an offense if the attendant circumstances were as that person believed them to be is guilty of an attempt." *See also United States v. Quijada*, 588 F.2d 1253 (9th Cir. 1978).

■ However, it is well established under the general law of attempt that an accused must intend to do an act which is criminal. Stated another way, he cannot be found guilty of attempting to do an act which is not criminal but which he merely believes is criminal. Wechsler, Jones, and Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy*, 61 Col.L.Rev. 571, 579 (1961); *see* 2 W. La Fave & A. Scott, *Substantive Criminal Law* § 6.3

at 38–39, 44, 47 (1986); *see also United States v. Hamrick*, 43 F.3d 877, 885 (4th Cir.1995). In *United States v. Thomas, supra*, we recognized this limitation as follows:

However, for purposes of clarity, we should make mention of that portion of paragraph 159, Manual for Courts–Martial, *supra*, which reads:

"It is not an attempt when every act intended by the accused could be completed without committing an offense, even though the accused may at the time believe he is committing an offense."

That provision has no reference to questions we have here discussed. Such language says no more than that if what an accused believed to be a substantive crime was actually no crime at all, he cannot be guilty of an attempt to commit such crime. *That is, when the intended action, even if completed, is not an offense despite the fact accused believed otherwise, he cannot be held for a criminal attempt. Under those circumstances a substantive offense is nonexistent, and an accused's acts, whether carried to fruition or not, constitute wholly lawful conduct.* It is interesting to observe that the same situation will exist under the Model Penal Code. *See* Tentative Draft No. 10, *supra*, page 31, which states, in the commentary:

"Of course, it is still necessary that the result desired or intended by the actor constitute a crime. If, according to his beliefs as to facts and legal relationships, the result desired or intended is not a crime, the actor will not be guilty of an attempt even though he firmly believes that his goal is criminal."

13 USCMA at 291, 32 CMR at 291 (emphasis added).

■ With these principles in mind, we turn to the present case. Appellant was found guilty of attempting to conspire with RP in 1991 to commit larceny of military pay entitlements. Stealing military pay entitlements and conspiring to steal the same are crimes under the Uniform Code of Military Justice. *See* Arts. 81 and 121. Additionally, he was found guilty of attempting to make false official statements. Making a false offi-

cial statement is also a crime under the Code. Art. 107, UCMJ, 10 USC § 907. Accordingly, even if appellant was lawfully married in October 1990, he could still be found guilty of the attempt crimes noted above if he intended to steal these funds and make false statements. Appellant asserts that the Government failed to prove he ever intended to steal these government funds or to deceive the Government concerning his marital status.

■ Appellant's lack-of-intent argument rests on his assertion that there was no evidence in his case that he *believed* he was not married to RP or that he believed he was not entitled to these military pay entitlements. He points to testimony of RP, his alleged conspirator, that they then believed they were married and entitled to these payments. He argues that no criminal intent to steal or deceive can be inferred in these circumstances. We note, however, other evidence was introduced in this case showing or tending to show contrary beliefs on their part. The rule is that legal sufficiency is determined based on the evidence most favorable to the Government. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Agent Smith testified that during his initial investigation of these offenses, both appellant and RP admitted that they were "not married." We also note that RP herself admitted appellant's earlier "doctoring" of RP's brother's marriage certificate to produce a phony certificate to secure these benefits. Finally, with respect to the attempted conspiracy to steal, we note that ample evidence was presented at this trial that appellant knew that the military entitlements in question could not be paid without a marriage certificate or license. *E.g.*, para. 42–5, AFM 177–373, Vol I (Change 6) (15 November 1990). *See also United States v. Bulger*, 41 MJ 194, 198–99 (CMA 1994) (Sullivan, C.J., concurring). While RP offered an innocent explanation for their fraudulent conduct (a mere matter of convenience), the factfinder was not required to accept this almost patently absurd explanation. *See United States v. Williams*, 21 MJ 360, 362 (CMA 1986). In

these circumstances, we conclude that sufficient evidence was presented for a reasonable factfinder to find or infer beyond a reasonable doubt that appellant intended to conspire with RP to steal military pay entitlements and intended to make false official statements. *See United States v. Frazier*, 34 MJ 194, 199 n. 4 (CMA 1992).

Appellant also argues that the South Carolina judicial decree of April 1992 established as a matter of law that appellant earlier believed himself married when he allegedly attempted to conspire with RP to steal military entitlements and to make false statements. He cites no legal authority from the military, South Carolina, or anywhere else for this proposition. In this posture, we find his argument unpersuasive. *Cf. United States v. Allen*, 27 MJ at 239. Appellant also suggests that the military judge's failure to find him guilty of attempted larceny on the basis of his belief that he was stealing these military entitlements undermines his conviction for attempted conspiracy to steal the same. This final argument we reject as a non sequitur. *See generally United States v. Snipes*, 18 MJ 172 (CMA 1984).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge CRAWFORD and Senior Judge EVERETT concur.

COX, Chief Judge (concurring in part and dissenting in part):

It appears that both parties and the military judge assumed that, if appellant was lawfully married under the laws of South Carolina, it would have something to do with the outcome of this case. It would not.

Appellant was charged, *inter alia*, with stealing monies from the United States Government. Art. 121, Uniform Code of Military Justice, 10 USC § 921. In pertinent part, that statute provides:

(a) Any person subject to this chapter who *wrongfully takes, obtains*, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny....

(Emphasis added.)

The pertinent Department of Defense (DoD) Directives and Air Force Regulations provide a comprehensive manner in which marital and family benefits may be obtained. It is clear from these rules that entitlements are based upon proper presentation of the claim *for government determination of validity.* The same rules that authorize payments also vest the Government with the responsibility to determine eligibility.

For example, under the rubric, "RULES FOR DETERMINING RELATIONSHIP AND DEPENDENCY," paragraph 30232 of the DOD Military Pay and Allowances Entitlements Manual (hereafter Pay Manual) provides:

A member's lawful spouse and legitimate, unmarried, minor children are at all times considered dependents for BAQ purposes.... A determination of relationship is required ....

(Emphasis added.)

Further, paragraph 30233 of the Pay Manual, *supra* ("Validity of Member's Marriage") provides:

Any case where the validity of a member's marriage is questioned is considered a case of doubtful relationship. Cases in this category include:

\*        \*        \*

d. **Common–Law Marriages.** Under laws of certain states, an informal (common-law) marriage may be entered into by persons who do not obtain a license to marry or go through certain other formalities. Common-law marriages entered into in those states are considered valid if they are contracted in accordance with state law.

Paragraph 30233f(3) of the Pay Manual, *supra* ("Determinations and Validations") even identifies the appropriate offices for the respective services to "[s]ubmit requests for

determination on validity of a marriage or for validation of payments."

Other such benefits obtained by appellant had similar prerequisites. *See* para. 30114, Pay Manual, *supra;* para. 41–2a.(2), AFM 177–373 (Vol. I (Change 3) 1 Oct 1989).

Did appellant make such a proper presentation? Did he walk in the door and honestly report his claim to marital benefits on the basis of a common-law marriage? Obviously not. Had he forthrightly presented his claim of common-law marriage, there was an established procedure to resolve it. If he needed a court interpretation at that time, he could have gotten it. Instead, he knowingly tendered a false and altered document—reflecting that he had undergone a ceremonial marriage—and he made numerous other fraudulent representations and presentations. As a result of these knowingly false representations and documents, appellant obtained the monetary benefits in issue.

Clearly, under any construction, appellant "wrongfully" took or obtained the monies. *Cf. United States v. Antonelli*, 35 MJ 122 (CMA 1992), *on further review*, 43 MJ 183 (1995). The fact that, *ex parte* to the Government, he got a State court to declare him retroactively married says nothing about *how* he took or obtained the monies. The related charge of conspiracy was equally valid under similar analysis.

However, the larceny and conspiracy charges are gone, as the military judge acquitted appellant of both of them, finding him guilty instead of the nonsensical charge of "attempted conspiracy." How does one attempt to conspire? Since the essence of conspiracy is a criminal agreement, is it that one strains to reach an agreement with somebody, but fails? Is that what happened here? And if conspiracy and attempts are both inchoate crimes, but conspiracy "attacks inchoate crime at a far more incipient stage" than attempts, 2 W. LaFave and A. Scott, Substantive Criminal Law 68–69 (1986), how did attempts suddenly leap ahead of conspiracy again? *See also* § 5.03, Comment, ALI Model Penal Code, *reprinted in* ALI *Model Penal Code and Commentaries* (Part I) 387

(1985). Does this mean we will soon be seeing charges of conspiring to attempt to conspire to commit an offense—to be followed by attempting to conspire to attempt to conspire to commit an offense, *ad infinitum?*

Obviously, as suggested by Judge Gierke (herein and in *United States v. Anzalone,* 43 MJ 322, 326–27 (1995) (Gierke and Cox JJ., concurring in the result)), the correct answer is that the only "attempt to conspire" is the wholly separate offense of solicitation. But even though there is a solicitation within every conspiracy, not every participant in every conspiracy is a solicitor. It is possible to be a solicitee. Here, the Government did not allege or prove that appellant was a solicitor, so that offense is not now available as a fall-back.

In my opinion, it is not worth confusing the law of conspiracy just to nail a petty thief. Accordingly, I vote with Judge Gierke to set aside the attempted conspiracy conviction and to return the record to the court below for sentence reassessment.

GIERKE, Judge (concurring in part and dissenting in part):

I agree with the majority that the military judge did not err in finding appellant guilty of attempting to make false official statements. I disagree with the majority's holding concerning attempted conspiracy.

For the reasons stated in my separate opinion in *United States v. Anzalone,* 43 MJ 322, 326–27 (1995), I believe that there is no such crime as attempted conspiracy. In *Anzalone* I concurred in the result only because I concluded that the specification described a solicitation, which is an offense under Article 134, Uniform Code of Military Justice, 10 USC § 934.

I would set aside the conviction of attempted conspiracy and return the case to the court below for reassessment of the sentence based on the remaining findings of guilty.